**Stephen W. RICHEY, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 97–478C.

United States Court of Federal Claims.

Aug. 26, 1999.

Jack E. Carter, Fayetteville, North Carolina, attorney of record for plaintiff.

Robert Steinbuch, Washington, D.C., with whom was Acting Assistant Attorney General David W. Ogden, for defendant.

## OPINION

GIBSON, Senior Judge.

### INTRODUCTION

This case involves a dispute over a military personnel decision by the U.S. Army. The plaintiff, Stephen W. Richey, received an involuntary honorable discharge after twice being passed over for promotion. Mr. Richey filed suit in the United States Court of Federal Claims, alleging that the discharge was improper. He seeks backpay, reinstatement to his former position, deletion of adverse reports from his record, and costs and attorneys' fees.

The government has moved for judgment on the administrative record. Mr. Richey opposes the government's motion and has filed a cross-motion for judgment on the administrative record.

### FACTS

Mr. Stephen W. Richey received an involuntary honorable discharge from the United States Army on April 1, 1996, after twice being passed over for promotion. He contends that the discharge is improper and was the result of two inaccurate Officer Evaluation Reports (OERs). The first evaluation covered the period from December 3, 1988 through December 15, 1989. The second evaluation covered the period from January 29, 1991 through April 18, 1991. Mr. Richey contends that the Army Board for Correction of Military Records (Correction Board ) acted in a manner that is arbitrary, capricious, and not in accordance with Army regulations when it failed to delete or correct the evaluations.

#### 1. The 1989 OER

From November 1988 through December 1989, Mr. Richey was squadron maintenance officer for an armored cavalry regiment stationed at Fort Bliss, Texas. During this tour of duty, he received a derogatory OER for the period from December 3, 1988 through September 15, 1989, from his rater and sen-

ior rater.[1] The rater stated in his evaluation that Mr. Richey "was just not the man for the job and it showed. He would be better utilized in a concepts and doctrinal line of work where his intellect could be better utilized." Admin. Rec. at 16. Following this adverse evaluation, Mr. Richey was removed from his position as Squadron Maintenance Officer.

The Officer Special Review Board (OSRB) was petitioned by Mr. Richey for removal of the adverse OER from his record. He stated four grounds for the petition. First, Mr. Richey alleged that the relationship with his rater was hostile from the outset, and related a number of incidents to illustrate his point. For example, Mr. Richey alleged that his rater told him in a private conversation that, "junior captains are a dime a dozen, and if we need a scapegoat for the maintenance situation, it will probably be you." Admin. Rec. Supp. at 12. Also, Mr. Richey relayed an incident during which the rater gave him a written reprimand for actions ordered by the rater himself. Second, the regiment was in a state of extreme disarray when Mr. Richey took over as Squadron Maintenance Officer due to prior neglect. Third, Mr. Richey was put in charge of officers who were incompetent. Fourth, the military organization on which Mr. Richey relied for supplies was severely disorganized.

In support of his petition to the OSRB, Mr. Richey provided five (5) letters from other officers who had observed his performance. All of these letters concurred with Mr. Richey's assessment that the squadron had severe maintenance problems prior to his arrival, that he received little support from his superiors, and that during his tenure, the squadron underwent intensive training, adding to the wear-and-tear on the squadron's vehicles for which he was responsible.

In its review of Mr. Richey's appeal, the OSRB contacted the rater and senior rater. The OSRB did not contact Mr. Richey or any of his witnesses. The rater told the OSRB that Mr. Richey had performed poorly during gunnery and field training exercises and that he "had great difficulty in managing available maintenance resources/assets." Admin. Rec. at 36. Also, the rater noted that Mr. Richey was often unavailable at times when he was needed. Finally, the rater stated that he had given Mr. Richey formal counseling on his shortcomings, and that Mr. Richey responded that "he knew he had some problems in doing the job." Admin. Rec. at 36. In a similar vein, the senior rater told the OSRB that Mr. Richey had difficulty dealing with people and team-building, and was "overwhelmed" by his responsibility. Furthermore, the senior rater corroborated the rater's impression that Mr. Richey was unavailable when needed.

After hospitably reviewing some of the evidence, i.e., the OSRB did not interview Mr. Richey or any of his five (5) witnesses, it found that the 1989 OER was not substantially inaccurate or unjust, and refused to delete the OER. The OSRB stated the following grounds for its decision: (i) the rating officials were able to clearly articulate reasons for the adverse evaluation, and (ii) Mr. Richey's witnesses did not occupy the same position as the raters, and OSRB therefore gave the witnesses' statements substantially less credibility than the raters' statements.

Following the OSRB's ruling, Mr. Richey petitioned the Correction Board for removal of the 1989 OER. After reviewing the report prepared by the OSRB and the letters submitted by Mr. Richey in support of his position, the Correction Board denied Mr. Richey's petition. The Correction Board blandly concluded that the 1989 OER was not substantially inaccurate or unjust, and refused to delete the adverse OER, based on two findings. First, the Correction Board found that Mr. Richey had not submitted sufficient evidence to demonstrate that the adverse OER contained any serious administrative deficiency or was prepared in violation of applicable regulations. Second, the OER appeared to present a fair and objec-

---

1. In the Army, an officer receives periodic written evaluations that provide information to the Army for use in making personnel decisions. Army Reg. 623–105 ¶ 1–4. Evaluations are prepared by the officer's rater, usually his immediate superior, and his senior rater, usually an officer above the rater in the chain of command. *Id.* at ¶ 3–1, 3–4, and 3–11.

tive appraisal of Mr. Richey's performance and potential.

### 2. The 1991 OER

When rated for the period January 29, 1991 through April 18, 1991, Mr. Richey was serving in Southwest Asia in Operation Desert Storm. He received a "below center of mass" rating for this period. As with the 1989 OER, Mr. Richey again petitioned the OSRB for amendment of the 1991 OER on grounds that the OER was substantially inaccurate. Senior raters are supposed to evaluate the potential of officers by comparing them with officers of the same grade. Army Reg. 623–105 ¶ 4–16(b). To rate potential, the senior rater puts an X in one of nine vertically-stacked blocks. The top block is the highest-level block and should represent the top 1% of rated officers. Id. at ¶ 4–16(c). The Army also compiles a history of the senior rater's rating history of officers in the same grade, known as a "profile." Id. at ¶ 4–16(d)(5)(a). The purpose of the profile is "to place the rated officer's OER in perspective by revealing the senior rater's general rating tendency." Id. If the senior rater has properly evaluated all similarly-graded officers, his profile should approximate a bell-shaped distribution curve. Id. at ¶ 4–16(b). A "below center of mass" rating occurs when a rated officer is placed in a block below where the majority of rated officers are ranked in the senior rater's profile. See generally Admin. Rec. at 68. This rating indicates that, in the opinion of the senior rater, an officer performed inferior to his peers. The "below center of mass" rating places an officer further back in the queue for promotion.

In his petition, Mr. Richey contended that the senior rater had "mismanaged" his profile. The senior rater, for example, had generally scored his officers too high—officers in the same grade as Mr. Richey, he placed five officers in block one, and four officers, including Mr. Richey, in block two. Because the senior rater's scores of rated officers was, on average, too high and his scores did not fall along a bell curve, Mr. Richey stated that the block two rating puts him "below center of mass."

Accompanying the petition, Mr. Richey submitted a letter from the senior rater indicating that the senior rater's intent was to place Mr. Richey "in the middle of the pack"; the letter also states that Mr. Richey's "potential was accurately reflected in a 'two-block' rating." Admin. Rec. at 56. In addition, Mr. Richey submitted a letter from his rater that states that Mr. Richey should have received a "center of mass" rating. The rater, LTC Dan T. Hitchcock, further stated that Mr. Richey had been—

> ... fully capable and proficient in those duties and tasks that were assigned to him.... Additionally, I am personally aware that Colonel Riley, the senior rater, felt that CPT Richey was a solid performer that could be depended on. My assessment of CPT Richey is that ... he performed well and should have achieved a Center of Mass rating.

Admin. Rec. at 57.

The OSRB, notwithstanding, denied Mr. Richey's request for amendment of his record on grounds that he failed to provide clear and convincing evidence to support the contention that the OER was inaccurate. In ruling on the 1991 OER, surprisingly, the OSRB did not contact the rating officials.

Consequently, Mr. Richey appealed the OSRB's decision to the Correction Board on grounds of substantial error. While noting that the OSRB had found that the senior rater had mismanaged his profile, the Correction Board denied Mr. Richey relief on three grounds. First, the Correction Board stated that Mr. Richey had failed to show that the contested OER had been prepared in a manner that did not comply with applicable regulations and policy. Second, the Correction Board determined that he had failed to show that "the rating officials' evaluations represented other than their objective judgment and considered opinions at the time they prepared the contested OER...." Admin. Rec. at 70. Finally, the Correction Board concluded that the 1991 OER represented a fair, objective, and valid appraisal of Mr. Richey's demonstrated performance and potential during the rated period.

*3. Posture*

Mr. Richey filed a complaint in this court on July 15, 1997. In count one, he alleges that the Correction Board acted in an arbitrary and capricious manner when it failed to remove the 1989 OER from his record. In count two, he alleges that the 1991 OER was not processed in accordance with military regulations, and that the Correction Board acted in an arbitrary and capricious manner when it failed to amend the 1991 OER to reflect that Mr. Richey was "center of mass." He contends that the Correction Board's failure to act in both these instances caused his involuntary separation from active military duty.

Mr. Richey asks this court to: (i) award him all pay and allowances due him occasioned by the Correction Board's failure to remove the 1989 OER and failure to amend the 1991 OER; (ii) reinstate him to active military duty and to correct his military records; and (iii) award him his costs and attorneys' fees.

*4. Motion for Judgment On The Administrative Record*

Pursuant to Rule 56.1 of this court, the government filed a motion for judgment on the administrative record on October 31, 1997, on both counts one and two.

Regarding count one, the government argues that the Correction Board's decision not to remove the 1989 OER from Mr. Richey's record was not arbitrary or capricious. The government contends that the Correction Board considered the rationale of the OSRB and the supporting statements that Mr. Richey submitted, and that there is substantial evidence in the record for the Correction Board's decision.

In response to count two regarding the 1991 OER, the government argues that Mr. Richey failed to prove that the Correction Board's decision to not amend the report was arbitrary or capricious. According to the government, Mr. Richey was evaluated according to Army guidelines, and the senior rater's mismanagement of his profile was harmless error.

In response to the government's motion, Mr. Richey filed an opposition thereto and also filed a cross-motion for judgment on the administrative record. Regarding count one, Mr. Richey argues that the OER is substantially inaccurate because it does not reflect external circumstances, over which he had no control, that adversely affected his job performance. He further argues that Army regulations require that a rater render an *objective* evaluation, and that the 1989 evaluation was not objective because it reflects the negative relationship between the rater and Mr. Richey. He also contends that the Correction Board's failure to make these findings and failure to remove the OER from his record was an arbitrary and capricious act which primarily caused his involuntary discharge from the Army.

In count two, Mr. Richey argues that his rating was lowered from "center of mass" to "below center of mass" by a method not contemplated by Army procedures and is therefore substantially inaccurate. He, therefore, contends that the Correction Board's decision not to amend the OER so as to place him at "center of mass" was arbitrary and capricious, and caused his involuntary discharge from the Army.

**DISCUSSION**

*1. Background*

Motions for judgment on the administrative record are reviewed according to the same standard as motions for summary judgement. *See* RCFC 56.1(a); *Hoskins v. United States*, 40 Fed.Cl. 259, 270 (1998). Judgment on the administrative record is appropriate when there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Neither party in this case argues that there are any genuine issues of material fact. Whether it is so or not is not the issue. The issue is, notwithstanding such—whether in truth and in fact there are clearly genuine issues of material fact.

In military personnel matters, a plaintiff has the burden of proving by clear

and convincing evidence[2] that the action of the administrative board is "arbitrary, capricious, contrary to law or unsupported by substantial evidence." *Wronke v. Marsh,* 787 F.2d 1569, 1576 (Fed.Cir.1986), *cert. denied,* 479 U.S. 853, 107 S.Ct. 188, 93 L.Ed.2d 121 (1986); *Sanders v. United States,* 219 Ct.Cl. 285, 594 F.2d 804, 811 (1979). In order to meet this burden, a plaintiff must prove two elements: (i) a legal error or injustice in the correction board proceeding; and (ii) an adequate nexus or link between the error and some adverse action such as a passover or nonselection for promotion. *Hary v. United States,* 223 Ct.Cl. 10, 618 F.2d 704, 706 (1980).

■ The first element, commission of a legal error by an administrative board, can be based on either "legal error or material factual error, or injustice amounting to such error. . . ." *Sanders,* 594 F.2d at 813. An "injustice" might be based on the failure by the Correction Board to correct either a gross material error of fact or to correct an action contrary to all evidence. *Id.* The failure to correct such errors, however, must be "arbitrary and capricious, or in bad faith, or contrary to law, or without rational basis, seriously prejudicial to plaintiff, and with monetary consequences. In such event, the abuse of administrative discretion rises to the level of legal error. . . ." *Id.*

■ The second element is a nexus requirement. The plaintiff must either show that the error *substantially* affected the decision to separate him from active duty, or he must produce enough evidence to justify further inquiry by the court into the nexus between the legal error and the adverse action. *Hary,* 618 F.2d at 707.[3]

■ The standard articulated above is highly deferential toward the correction board's decision. It reflects the fact that it is the executive branch, and not the courts, that

are responsible for running the military. *Grieg v. United States,* 226 Ct.Cl. 258, 640 F.2d 1261, 1268 (1981) (citing *Orloff v. Willoughby,* 345 U.S. 83, 93, 73 S.Ct. 534, 97 L.Ed. 842 (1953)). Even if this court would come to a different conclusion based on the same set of facts, we will not generally overturn a decision by a military review board absent a showing of legal error. *Sanders,* 594 F.2d at 814. The determination of who is fit or unfit to serve in the military is a discretionary matter, firmly within the province of the military. *Heisig v. United States,* 719 F.2d 1153, 1156 (Fed.Cir.1983) (citing *Orloff,* 345 U.S. at 93–94, 73 S.Ct. 534).

Therefore, the plaintiff's burden is a heavy one. He *must* produce evidence that "overcome[s] the strong, but rebuttable, presumption that administrators of the military, like other public officers, discharge their duties correctly, lawfully, and in good faith." *Sanders,* 594 F.2d at 813 (citations omitted). This presumption extends to officers responsible for the rating of other officers. *Guy v. United States,* 221 Ct.Cl. 427, 608 F.2d 867, 870 (1979).

### 2. The 1989 OER

Mr. Richey contends that the Correction Board acted in a manner that is arbitrary, capricious, and not in accordance with Army regulations when it failed to delete the 1989 OER. He argues that the Correction Board's failure to delete the OER is legal error for two reasons: (i) the OER was substantially inaccurate; and (ii) the OER was not prepared in accordance with military regulations. He further argues that there is a nexus between the Correction Board's failure to delete the contested OER and his subsequent nonpromotion and discharge from the Army. The first step in our analysis is to determine whether there was a legal error in the Correction Board's decision,

---

2. A plaintiff prevails, under the clear and convincing standard, if he is able to convince the fact finder that his factual contentions are "highly probable," or, as stated by the Supreme Court, if the evidence offered by the plaintiff "instantly tilt[s] the evidentiary scales in the affirmative when weighed against the evidence . . . offered in opposition." *Colorado v. New Mexico,* 467 U.S. 310, 316, 104 S.Ct. 2433, 81 L.Ed.2d 247 (1984);

*see Price v. Symsek,* 988 F.2d 1187, 1191 (Fed. Cir.1993).

3. The nexus requirement is not a "but for" test; a plaintiff does not have the burden of showing a conclusive causal connection, or that the board's illegal actions alone led to the nonpromotion and subsequent discharge. *Sanders,* 594 F.2d at 814.

thereby rendering it arbitrary, capricious, contrary to law, or unsupported by substantial evidence. *Wronke,* 787 F.2d at 1576.

When the Correction Board reviewed the OSRB's denial of Mr. Richey's petition, it had before it his specific allegations of inaccuracy. First, he contended that the OER does not reflect that he had recently assumed responsibility for a squadron that had been mismanaged previously. Second, he alleged that his job performance was being "micromanaged," and thus hindered, by the rater (who was also his superior officer). Third, he claimed he was put in charge of officers who were incompetent. Finally, he stated that the military organization upon which he relied for supplies was severely disorganized and adversely affected his job performance. In support of his contentions, Mr. Richey provided letters from other officers who had observed his performance and concurred with his assessment that the problems in the squadron were outside of his control.

As a second ground of contention, Mr. Richey alleged that the 1989 OER was not prepared in accordance with military regulatory procedures because the rater was not objective. He submitted a written statement to the OSRB indicating that his rater's need for a scapegoat was an improper factor that influenced the rating process. He alleged that his rater told him in a private conversation that, "junior captains are a dime a dozen, and if we need a scapegoat for the maintenance situation, it will probably be you." Admin. Rec. Supp. at 12. He submitted multiple letters supporting his contention that the rater was biased.

■ Military procedures require that the rating process be as objective as possible. *Guy v. United States,* 221 Ct.Cl. 427, 608 F.2d 867, 870–71 (1979) ("the general intent of [the regulations] is to ensure by every means possible that OERs be objective."). The former Court of Claims recognized, of course, that even though perfect objectivity is impossible, there are factors that may adversely affect ratings that have "no business being in the rating process." *Id.* Among these improper factors is bias that occurs when a rater lowers an officer's evaluation "for expediency personal to the rater's

own interests." *Skinner v. United States,* 219 Ct.Cl. 322, 594 F.2d 824, 828 (1979). An officer's challenge to an OER on the grounds that it was not objective must overcome the strong, but rebuttable, presumption that administrators of the military discharge their duties "correctly, lawfully, and in good faith." *Sanders,* 594 F.2d at 813. Thus, if Mr. Richey's contentions are true, it *may* be that the OER reflects an improper and prejudicial factor, *i.e.,* the rater's selfish desire to find a scapegoat for the maintenance problems of the squadron. In this case, the bias, if established, would be legal error and, if there is an adequate nexus to Mr. Richey's subsequent nonpromotion, would constitute grounds for overturning the OER.

■ The Correction Board reviewed all of the evidence before the OSRB and summarily concluded that the 1989 OER presented a fair and objective appraisal of Mr. Richey's potential and that there were no improper factors in the rating process. The OSRB, in evaluating Mr. Richey's contentions, contacted his rater and senior rater. Both these officials cited, as reasons for the negative evaluations, problems in his management of the resources available to him, his inability to deal with the people around him, and his unavailability when he was needed. The Correction Board failed to contact any of Mr. Richey's witnesses. Rather, it hospitably concluded that, while their statements were "complimentary to the applicant, the individuals submitting them did not occupy vantage points similar to the rating officials and were not privy to the requirements and expectations of the latter." Admin. Rec. at 36.

Our review of the Correction Board's decision is, at this posture, limited to the administrative record. *Long v. United States,* 12 Cl.Ct. 174, 176 (1987); *see also, Florida Power & Light Co. v. Lorion,* 470 U.S. 729, 105 S.Ct. 1598, 1607, 84 L.Ed.2d 643 (1985); *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). The record here shows that, while the OSRB interviewed both the rater and the senior rater, no corresponding interviews were conducted with Mr. Richey's witnesses to corroborate their impressions or statements of fact. For instance, one of Mr. Richey's sup-

porting witnesses, a fellow squadron maintenance officer, briefly summarized the prior maintenance problems and asserted that "[w]hen CPT Richey assumed the duties as the maintenance officer, he was the fourth maintenance officer within approximately one year. Considering the unit's ambitious training schedule and the maintenance posture, no officer could have dealt with all the problems which existed." Admin. Rec. Supp. at 14. Another of Mr. Richey's witnesses, the person who took over as squadron maintenance officer after him, corroborated the maintenance problems in the squadron, and explained that "[i]n a very short time [after he took over the position], I realized the Squadron's chain of command was going to give me the authority and support that CPT Richey never received." Admin. Rec. Supp. at 16. Finally, there was a total and inexcusable failure to investigate the rater's alleged comment to Mr. Richey to the effect that— *"junior captains are a dime a dozen, and if we need a scapegoat for the maintenance situation, it will probably be you."* Admin. Rec. Supp. at 12.

Moreover, after perusing the administrative record, we find a total absence of any meaningful effort by the Correction Board to determine the truth of Mr. Richey's allegations, namely, whether there was probative evidence of: (i) previous mismanagement of the squadron; (ii) "micro-management" of him by his rater; (iii) incompetent personnel under his command; (iv) severe disorganization of the military organization upon which he relied for supplies; and, finally, (v) hostility and bias of the rater against him. Instead, the Correction Board, referring to Mr. Richey's witnesses, brushes them off with the self-serving and cryptic statement that they did not "occupy vantage points similar to the rating officials." Admin. Rec. at 46. Against this background, the Correction Board summarily concluded that Mr. Richey had "failed to submit sufficient relevant evidence to demonstrate the existence of probable error or injustice." *Id.* at 47. These vague and conclusory statements are not helpful to this court in its effort to dispense justice to both parties. We find, on this record, that the administrative record is deficient in that this court cannot properly determine from said record the merits of Mr. Richey's contentions, which, if true, would appear to indicate that the OER was based on a gross material error of fact or was contrary to all evidence, such that the failure to correct such error rises to the level of legal error on the part of the Correction Board. *See Sanders,* 594 F.2d at 813.

Where, as here, an administrative record is found to be deficient by a reviewing court, its role is not to fill in the gaps. *Long v. United States,* 12 Cl.Ct. 174, 177 (1987). Rather, the Supreme Court advises that—

> [i]f the record before the agency does not support the agency action, if the agency has not considered all relevant factors, or if the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.

*Florida Power & Light Co. v. Lorion,* 105 S.Ct. at 1607. On the administrative record present here, the Correction Board has not made any determination as to the merits of Mr. Richey's allegations and the merits of the statements of his witnesses. In short, it has merely given petitioner's evidence "short-shrift." We simply cannot evaluate whether the Correction Board's denial of Mr. Richey's petition was based on gross material error of fact or is contrary to all evidence, because the administrative record fails to provide this court with an objective analysis of the alleged facts.

Additionally, even if we were to find that the 1989 adverse OER was in error, the administrative record does not indicate whether there is a nexus between the 1989 adverse OER and Mr. Richey's nonpromotion. Our predecessor court has enunciated two questions to be addressed in passing on the nexus issue between a defective OER and an adverse action:

> First, does the presence of the defective OERs in plaintiff's record make that record appear worse than it would absent those OERs, so that in that sense he was prejudiced by the OERs? Second, was plaintiff's comparative position before the

selection boards such that, even assuming that there was some prejudice associated with the defective OERs, it was unlikely that he would have been promoted in any event?

*Hary,* 618 F.2d at 709. On remand, which is required on this record, the Correction Board may determine that the 1989 OER was not defective. To appropriately develop the administrative record more completely and facilitate this court's review of the Correction Board's findings, should it come back to us for review, we direct the Correction Board to pointedly address and discuss on remand the aforementioned two issues observed in *Hary, supra,* in its factual findings and conclusions of law. To do so, the Correction Board must assume, arguendo, that the 1989 OER is defective when it addresses the connection between the 1989 OER and Mr. Richey's nonpromotion.

For all of the foregoing reasons, we remand this issue to the Correction Board to make specific and numbered findings of fact and conclusions of law based on such factual findings, on each of Mr. Richey's allegations regarding the 1989 OER and the effect of the 1989 OER on Mr. Richey's involuntary discharge. The issues to be addressed are as follows:

   (i) the extent to which there were external circumstances that could have affected Mr. Richey's job performance, including evidence of:

     (a) maintenance problems in the squadron prior to his tenure;

     (b) "micro-managing" of Mr. Richey by his rater;

     (c) incompetent personnel under Mr. Richey's command;

     (d) severe disorganization of the military organization upon which he relied for supplies; and

     (e) intensive training of the squadron accounting for extra wear-and-tear on the vehicles under Mr. Richey's care;

   (ii) the degree to which the rater was biased against Mr. Richey because of his need for a scapegoat for the unit's maintenance problems; and

   (iii) the effect of the 1989 adverse OER, which will be assumed defective, on Mr. Richey's nonpromotion, specifically:

     (a) whether the presence of the 1989 OER in Mr. Richey's record makes that record appear worse than it would absent the 1989 OER; and

     (b) whether Mr. Richey's comparative position before the selection boards was such that, even assuming that there was some prejudice associated with the 1989 OER, it was unlikely that he would have been promoted.

The Correction Board, in the process of addressing the foregoing issues, shall take oral testimony from such witnesses identified and/or presented by Mr. Richey.

Because we remand the issue of the 1989 OER to the Correction Board, we will defer ruling on both parties' motions for judgment on the administrative record until the Correction Board's supplemental factual findings and legal conclusions, on remand, are presented to this court.

3. *The 1991 OER*

   ■ Mr. Richey argues that the Correction Board acted in a manner that is arbitrary, capricious, and not in accordance with Army regulations when it failed to amend the 1991 OER. He contends that his rating was lowered from "center of mass" to "below center of mass" by a method not contemplated by Army procedures and is therefore substantially inaccurate. He further contends that the Correction Board's failure to amend his record led to his nonpromotion and subsequent involuntary separation from the Army.

We review the Correction Board's decision not to amend the 1991 OER in order to determine whether the decision was "arbitrary, capricious, contrary to law, or unsupported by substantial evidence." *Wronke,* 787 F.2d at 1576; *Sanders,* 594 F.2d at 812. The Correction Board held that: (i) Mr. Richey had not shown that the 1991 OER was not prepared in compliance with applicable military regulations and policy; (ii) Mr. Richey failed to submit evidence establishing

that the OER represented anything other than the rating officials' objective judgment and considered opinions at the time that the officials prepared the OER, or that the officials exercised faulty judgment during the evaluation process; and (iii) the 1991 OER represented a fair, objective, and valid appraisal of Mr. Richey's demonstrated performance and potential during the rated period.

We find that the Correction Board's conclusions are unsupported by any evidence in the administrative record and constitute legal error. Mr. Richey has shown to the satisfaction of this court that the 1991 OER was not prepared in compliance with applicable military regulations, and this court is convinced that the contested OER does not represent the objective judgment and considered opinion of the raters.

The foregoing is so because, first, the 1991 OER was not prepared in compliance with applicable military procedures. Each senior rater has an evaluation profile, which shows the distribution of that rater's evaluations. Army Reg. 623–105, ¶ 4–16(b)–(c). Army regulations require that the senior rater's entire profile approximate the shape of a bell curve. Id. at ¶ 4–16(b). Logically, to achieve a bell curve, the senior rater should have used at least a three-block rating system. Under Army regulations, one percent of the rated officers should fall into "block one" and would be considered "above center of mass." Id. at ¶ 4–16(c). By necessity, to form a bell curve, the center of mass would have to fall in block two or below.

The OSRB admits that the senior rater did not comply with Army regulations when the senior rater evaluated officers during this time. Instead of approximating the shape of a bell curve, the senior rater had scored five officers in block one, and four officers, including Mr. Richey, in block two. In other words, the senior rater mismanaged his profile by giving too many block one ratings, distorting his evaluation profile. Thus, there is substantial evidence that the senior rater did not comply with Army regulations in managing the totality of his evaluations.

Even though the OSRB acknowledged the senior rater's mismanagement, it, nevertheless, found that the mismanagement had no effect on Mr. Richey's OER. In a similar vein, the government contends that the senior rater's mismanagement of his profile is merely "harmless error" and not legal error.

These contentions, we are constrained to hold, are without merit. Mr. Richey submitted a letter to the Correction Board clearly showing that the senior rater's intent had been to place Mr. Richey "in the middle of the pack." Admin. Rec. at 56. Moreover, Mr. Richey submitted a letter from the rater stating that he should have received a "center of mass" rating. Despite the senior rater's expressed intent that Mr. Richey be placed "in the middle of the pack," the senior rater's mismanagement of his profile clearly caused him to be considered "below center of mass." This court can only conclude, therefore, that the senior rater's mismanagement of his profile is the convincing reason that Mr. Richey received a "below center of mass" rating instead of the intended "center of mass" rating.

We also find that the Correction Board's second conclusion—i.e., the contested OER represents the objective judgment and considered opinion of the rating officials—constitutes legal error. As indicated above, the senior rater's intent had been to place Mr. Richey "in the middle of the pack." Admin. Rec. at 56. Furthermore, the rater indicated, in a memorandum to the Correction Board, that "compared to other captains serving in the 3d Brigade, [Mr. Richey] performed well and should have achieved a Center of Mass rating." Admin. Rec. at 57.

All of the evidence cited above, which was, ironically, conscientiously outlined in the Correction Board's decision, lends clear and convincing weight to Mr. Richey's contentions. On the other hand, there is no evidence to support the Correction Board's conclusion that a "below center of mass" rating reflects the rater or senior rater's assessment of Mr. Richey's performance or promotion potential. In the absence of such evidence, we are compelled to find that Mr. Richey's evaluation was lowered from "center of mass" to "below center of mass" by the senior rater's mismanagement of his profile, which was in turn a violation of Army regula-

tions. Therefore, we hold that the Correction Board's failure to correct the 1991 OER is legal error. *Hary*, 618 F.2d at 709 (stating that it is legal error for a rater's evaluation to be lowered by some method not contemplated by the regulations).

The Correction Board's last conclusion— *i.e.*, 1991 OER represents a fair, objective, and valid appraisal of Mr. Richey's demonstrated performance and potential during the rated period—is also unsupported by any evidence in the administrative record and likewise constitutes clear legal error. All of the evidence cited above indicates that both the rater and senior rater believed that Mr. Richey performed *at* "center of mass," and both intended to rate him as such. There is no evidence to show that the 1991 OER, which put Mr. Richey "below center of mass," was reflective of his performance and potential in the eyes of his raters. Thus, the Correction Board's bland conclusion that the 1991 OER was a fair and valid appraisal is not supported by any evidence in the record.

For the reasons cited above, Mr. Richey has proven by clear and convincing evidence that the Correction Board committed legal error when it failed to amend the 1991 OER. He has thus satisfied the first element of proving that the Correction Board's action was arbitrary and capricious.

As to the second element, the nexus requirement, *see Hary*, 618 F.2d at 706, Mr. Richey has offered no proof beyond his undisputed allegations that the 1991 OER was a factor in his involuntary honorable discharge subsequent to two passovers for promotion. Furthermore, the administrative record has not been developed as to the connection between the 1991 OER and Mr. Richey's involuntary discharge. We are already remanding the issue of the 1989 OER to the Correction Board for further consideration. Therefore, we further request the Correction Board to make findings regarding the nexus between the 1991 OER, which we find to be in error, and Mr. Richey's nonpromotion. Specifically, we direct the Correction Board to address the following two issues:

(i) whether the presence of the 1991 OER's below center of mass rating in Mr. Richey's record makes that record appear worse than it would absent the 1991 OER; and

(ii) whether Mr. Richey's comparative position before the selection boards was such that, even assuming that there was some prejudice associated with the 1991 below center of mass rating, it was unlikely that he would have been promoted.

Because we are remanding this issue to the Correction Board for further findings of fact and conclusions of law, we will defer ruling on both parties' motions for judgment on the administrative record until the Correction Board's factual findings and legal conclusions on remand are presented to this court.

**CONCLUSION**

For all of the foregoing reasons, we hereby defer ruling on both parties' motions for judgment on the administrative record. The case shall be remanded under Rule 60.1 of the Rules of the U.S. Court of Federal Claims to the U.S. Army Board for Correction of Military Records for a determination of factual findings and conclusions of law as directed in this opinion. Pending this remand to the Correction Board, the proceedings in this court are hereby stayed to and including March 1, 2000. Counsel for the government is designated (under Rule 60.1(a)(5)) to file with the court every 30 days a status report regarding the proceedings on remand, the first being due on or before Monday, September 27, 1999. There shall be no enlargements on the above stay period. Therefore, defendant shall submit all new findings of fact and conclusions of law to this court on or before March 1, 2000.

IT IS SO ORDERED.