**RUST CONSTRUCTORS INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 00–582 C.

United States Court of Federal Claims.

May 31, 2001.

Howell Roger Riggs, Huntsville, AL, for plaintiff.

Janene M. Marasciullo, United States Department of Justice, Washington, D.C., for defendant, with whom were Assistant Attorney General Lois J. Schiffer, Director David M. Cohen, and Assistant Director Bryant G. Snee, for defendant.

## ORDER

MOODY R. TIDWELL, III, Senior Judge.

This post-award bid protest comes before the court on plaintiff's motion for summary judgment and defendant's cross-motion for judgment upon the administrative record. Plaintiff, Rust Constructor, Inc. (Rust), contests the Army Corps of Engineers' (Corps or defendant) determination to perform work in-house, on grounds that the government violated applicable laws and regulations. Plaintiff seeks a permanent injunction enjoining the Corps to award the services sought in the solicitation to Rust as the best value to the government. For the reasons set forth below, the court denies plaintiff's motion for summary judgment and allows defendant's motion for judgment upon the administrative record.

## BACKGROUND

The facts are set forth in the Administrative Record filed with the court on November

6, 2000, and are summarized as follows. On June 14, 1999 the Corps issued Solicitation DACA41–98–R–0021 for competitive proposals from business offerors to enter into an agreement entitled "Public Works Operation and Maintenance Contract," a general maintenance and repair contract for the grounds and facilities at Fort Riley, Kansas. The Solicitation required the government to evaluate the bids of all private sector offerors, in accordance with the procedures delineated in the Army Federal Acquisition Regulation Supplement Appendix AA, to determine which of these bidders presented the overall "Best Value" to the government. Price and other factors were to be considered in the selection process, and the government expressly reserved the rights to accept offers that were not the lowest in price, and to reject any or all offers. The Solicitation further provided that award of the contract could be made to the superior proposal, regardless of cost or price, if the price was determined to be reasonable. The initial phase of the selection process involved the ranking of various bidders against each other. Upon the completion of technical ratings and other considerations, one bidder would be selected. The private offeror thus selected would then compete in a cost competition against the government. The cost competition, as outlined in Section L of the Solicitation, would be used to determine who would provide actual property maintenance and repair services at Fort Riley. The focus of the cost competition would be on whether the private offeror or the government was the more economical provider of services. See Administrative Record (AR) at Tab 7.

The AR indicates that Office of Management and Budget, Performance of Commercial Activities, Circular No. A–76 (August 4, 1983) (revised 1999) (OMB Circular A–76) and its Revised Supplemental Handbook, Performance of Commercial Activities, (March 1996) (updated 1999) (OMB Circular A–76 Supp.) applied to the Solicitation. Plaintiff submitted its initial proposal on December 10, 1999. *See* AR at Tab 21. Rust was the sole private sector offeror to submit a proposal in the first stage of the competition, so the government entered into price negotiations with plaintiff. See AR at Tab

23. Rust visited the site and, consequent to this visit and the previous negotiations, the government issued an amendment to the Solicitation. *See* AR at Tabs 25–26. Plaintiff submitted a revised proposal on March 7, 2000. *See* AR at Tab 28. After finding Rust's proposed pricing too high, the government engaged in further negotiations with Rust. See AR at Tabs 29–33. As a result of these negotiations, plaintiff submitted a revised cost proposal on May 2, 2000. *See* AR at Tab 34. This last bid was accepted by the government as being the proposal giving the "Best Value" to the government. *See* AR at Tab 35.

Rust's bid entered into competition with the government's most efficient organization (MEO). The MEO "refers to the Government's in-house organization to perform a commercial activity." OMB Circular A–76 Supp. During the cost comparison, the government calculated plaintiff's bid to exceed the MEO's cost by $21, 476,825. *See* AR at Tabs 36–37. The government notified Rust of its decision to use in-house performance to fill the needs of Fort Riley on May 31, 2000. See AR at Tab 38.

On June 29, 2000, Rust filed an appeal with the United States Army Forces Command Administrative Appeals Board (FORSCOM AAB). Plaintiff protested that:

1) The Government proposal to retain the work in-house failed to address several significant areas of cost.

2) The Government proposal and proposed costs did not conform to the solicitation contract line items which rendered any side by side performance comparison and cost comparison meaningless.

3) The evaluation of the Government's priced failed to consider any elements of "best value" as required by the Solicitation.

4) The evaluation of the Government's price failed to determine in any meaningful way the realism of the Government's price.

5) The Government's price failed to include the cost of significant key personnel as required by solicitation.

6) In certain specific instances, the solicitation required the contractor to propose

specific manning levels and hours of operation; however, on the other hand, the Government price proposed cost based on a reduction of manning levels and/or reduced hours of operation inconsistent with the solicitation.

7) The evaluators improperly included one-time conversion costs for Plaintiff which were inconsistent with the requirements of the Solicitation and resulted in a significant increase to Rust in the cost comparison.

8) The Government's price failed to acknowledge or consider cost added by amendments one through thirteen.

9) The Government failed to provide certain requested work load data which effected materially the price proposed by Rust. AR at Tab 40.

On August 29, 2000, the FORSCOM AAB notified Rust of its decision that, while there were cost comparison errors, these errors were not of sufficient magnitude to change the decision of the initial cost comparison. *See* AR at Tab 43. Plaintiff filed its complaint before this court on September 20, 2000, requesting, *inter alia,* a permanent injunction enjoining defendant to award the services sought in the Solicitation to Rust as the "Best Value" to the government. Plaintiff filed for summary judgment on March 30, 2001, and defendant filed a cross-motion for judgment upon the administrative record on May 4, 2001.

## DISCUSSION

### I. *Standard of Review*

Motions for judgement based upon the administrative record are reviewed under the same standard as motions for summary judgment. Rule 56.1(a) of the Rules of the Court of Federal Claims (RCFC); *see also Richey v. United States,* 44 Fed.Cl. 577, 581 (1999). Such motions are appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). As in the case at bar, when both parties enter dispositive motions bearing a summary judgment standard, each

party bears its own burden to demonstrate the lack of genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In meeting this high standard, the court infers all evidence in the light most favorable to the nonmovant. *See Anderson v. Liberty Lobby,* 477 U.S. at 255, 106 S.Ct. 2505.

In addition, the standard of review applicable to bid protests is consistent with the standard applied by the United States district courts to agency decisions pursuant to the Administrative Procedure Act (APA), 5 U.S.C. § 706. 28 U.S.C. § 1491; *see also SDS Int'l v. United States,* 48 Fed.Cl. 759, 766 (2001); *Cubic Applications, Inc. v. United States,* 37 Fed.Cl. 339, 342 (1997). Section 706(2)(A) of the APA provides, in relevant part, that a reviewing court shall set aside agency actions found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(a) (1994).

■ The arbitrary and capricious standard is highly deferential. The reviewing court should not act as a substitute for the judgment of the agency. See *Cubic,* 37 Fed.Cl. at 342; *RADVA Corp. v. United States,* 17 Cl.Ct. 812, 818–19 (1989). In a procurement case the court may set aside an agency's action only when there is no rational basis for the agency's decision. *Keco Indus., Inc. v. United States,* 203 Ct.Cl. 566, 579, 492 F.2d 1200 (1974). In fact, a material issue of fact evidencing an irrational decision of such magnitude would almost always implicate an allegation of bad faith. *Keco,* 203 Ct.Cl. at 575, 492 F.2d 1200.

■ In evaluating whether an agency has acted arbitrarily or capriciously, the court considers whether: (1) there was subjective bad faith on the part of procurement officials; (2) there was not a reasonable basis for the procurement decision; (3) the procuring officials abused their discretion; and (4) pertinent statutes or regulations were violated. *See Keco Indus., Inc. v. United States,* 203 Ct.Cl. 566, 492 F.2d 1200, 1203–04 (1974); *see also Delbert Wheeler Constr., Inc. v. United States,* 39 Fed.Cl. 239, 246–47 (1997).

In the case at bar, plaintiff must show a "significant, prejudicial error [existed] in the procurement process." *Alfa Laval Separation, Inc. v. United States,* 175 F.3d 1365, 1367 (Fed.Cir.1999) (*citations omitted*). For plaintiff to establish a prejudicial error occurred, it must also prove "that there was a substantial chance it would have received the contract award but for that error." *Alfa Laval,* 175 F.3d at 1367 (*citations omitted*). Finally, in reviewing a government procurement, the court should defer to an agency decision that is "grounded in reason" even if the court itself might have chosen a different bidder. *See E.W. Bliss Co. v. United States,* 77 F.3d 445, 449 (Fed.Cir.1996).

## II. *Corps' Decision Was In Accordance With All Applicable Laws and Regulations*

Plaintiff challenges the Corps' decision on two grounds. First, plaintiff contends that the Corps erred by failing to conduct a "best value analysis" when it compared its proposal to the government's MEO. Second, in sole reliance on extra-record affidavits, plaintiff argues that the MEO proposed a different scope of work than plaintiff's proposal, and that the Corps' "evaluation of the Government's price failed to determine in any meaningful way the realism of the government's price." Plaintiff's Complaint for Permanent Injunction, at ¶ 11 (Filed: September 28, 2001).

### A. *Cost Comparison of the Proposals*

■ Plaintiff contends that the evaluation of the government's price failed to consider any elements of "best value" as required by the Solicitation. The Corps, however, was not required to determine whether Rust's proposal or the MEO's proposal offered the best value to the government. OMB Circular A–76 does not require the government to perform a best value analysis when comparing the performance of a commercial contractor to the government's in-house staff. OMB Circular A–76 states that the determination of who will do the work is based upon a "comparison of the cost of contracting and the cost of in-house performance." *OMB Circular A–76,* ¶ 5(a). The OMB Circular

A–76 defines cost comparison as "the process of developing an estimate of the cost of Government performance of a commercial activity and comparing it, in accordance with the requirements of the Supplement[al Handbook], to the cost to the Government for contract performance of the activity." OMB Circular A–76, ¶ 6(f). OMB Circular A–76 further states that "Government performance of a commercial activity is authorized if a cost comparison prepared in accordance with the Supplement demonstrates that the Government is operating or can operate the activity on an ongoing basis at an estimated lower cost than a qualified commercial source." OMB Circular A–76, ¶ 8(d). Therefore, the Corps did not violate the terms of Circular A–76 by not performing a "best value" comparison between Rust and the MEO.

Furthermore, the Solicitation did not require the government to conduct a best value comparison between plaintiff's proposal and the government's MEO proposal. The Solicitation specified that a cost comparison would be used for determining whether to perform the work in-house or to retain a commercial contractor. The Solicitation states in pertinent part:

> "The Government intends to select, without discussions, that responsible offeror whose proposal conforms to the solicitation and is determined to be the Best Value to the Government in accordance with the following relationship between price and technical merit. The technical evaluation factors, when combined, are significantly more important than price ... The selected offeror will compete against the government in a cost competition, pursuant to SECTION L paragraph 'Notice of Cost Comparison,' to determine who will provide real property maintenance and repair services at Fort Riley, Kansas. If the selected offeror is successful, a conditional award will be made."

*AR at Tab 7, Vol. I, Sec. M,* ¶ 2.

The Solicitation required the selection of a commercial contractor based upon the commercial contractor who offered the best value to the government. The successful commercial contractor would then compete with the

government based solely upon cost. The Notice of Cost Comparison in section L of the Solicitation states: "[t]his solicitation is part of a Government cost comparison to determine whether accomplishing the specified work under contract or by Government performance is more economical. If Government performance is determined to be more economical, this solicitation will be cancelled and no contract will be awarded." *AR at Tab 7, Vol. I, Sec. L, ¶ 5(a).*

The Solicitation did not require the government to perform an analysis to determine whether plaintiff's proposal or the MEO represented the best value to the government. The Solicitation required that the choice be determined upon the basis of cost. Therefore, defendant's failure to perform a best value comparison between Rust and the MEO did not violate applicable law, regulation or procedure and, hence, does not support a basis for awarding plaintiff a permanent injunction.

### B. *Scope of Work*

▉ Plaintiff argues that "the administrative record demonstrates that the government MEO does not propose to (sic) the same scope of work in the solicitation." Plaintiff's Motion for Summary Judgment, at 6 (Filed: March 30, 2001). The AR, however, does not support plaintiff's allegation. Instead, plaintiff's argument is solely based upon two extra-record affidavits that will be discussed *infra.*

### 1. *Level of Work*

Although plaintiff argues that the government MEO did not propose the same scope of work in the Solicitation, the record indicates to the contrary. The AR demonstrates that defendant complied with the requirements of the Supplemental Handbook to Circular A–76 to verify that the MEO and plaintiff proposed the same scope of work.

The Supplemental Handbook provides guidelines for ensuring that the government's in-house cost estimate is based upon the same scope of work and performance levels are the best value contract offer. *See* OMB Circular A–76 Supp. Ch. 3, ¶ H(3). The Source Selection Authority "evaluates

the in-house offer and assesses whether or not the same level of performance and performance quality will be achieved." OMB Circular A–76 Supp. Ch. 3, ¶ H(3)(d). Furthermore, the government MEO, like private commercial offerors, is required to submit its Technical Performance Plan to the A–76 Independent Review Officer (IRO). *See* OMB Circular A–76 Supp. Ch. 3, ¶ H(3)(a). The IRO must be "a qualified person from an impartial activity that is organizationally independent of the commercial activity being studied and the activity preparing the cost comparison." OMB Circular A–76 Supp. Ch. 3, ¶ I(1). "The IRO acts as an independent authority to: (a) ensure that the data contained in the Management Plan reasonably establish the Government's ability to perform the [Performance Work Statements] within the resources provided by the MEO, and (b) ensure that all costs entered on the [Cost Comparison Form] are fully justified and calculated in accordance with the procedures described in Part II of this Supplement." *See* OMB Circular A–76 Supp. Ch. 3, ¶ I(3)(a)-(b).

The record indicates that defendant followed these procedures. After plaintiff was identified as the successful offeror, the Source Selection Evaluation Board (SSEB) compared the technical section of plaintiff's proposal with the government's Technical Performance Plan. *See* AR at 36. Michael Whitacre, the SSEB Chairman, concluded that both organizations appear "capable of delivering quality service as defined by the technical requirements" and that each had proposed an equivalent level of work. *See* AR at 36. The Source Selection Authority, Larry M. Brom, confirmed this conclusion based upon his "independent assessment" of the information provided by the SSEB. *See* AR at 36. Mr. Brom determined that "[Rust's] proposal does not exceed the performance or performance quality requirements of the solicitation or the [Technical Performance Plan]." AR at 36.

Moreover, Helen Gaugh, the Deputy Garrison Commander at Fort Riley, certified that the government MEO was fully capable of performing the work required by the Perfor-

mance Work Statement (PWS). In her certification, Ms. Gaugh stated in relevant part:

I certify, to the best of my knowledge and belief, the in-house organization reflected in this cost comparison is the most efficient and cost effective organization that is fully capable of performing the scope of work and tasks required by the Performance Work Statement. I further certify that I have obtained from the appropriate authority concurrence that the organization structure, as proposed, can and will be fully implemented—subject to this cost comparison, in accordance with the applicable Federal regulations.

AR at 37.

Charles McGregor, the Managing Auditor of the Internal Audit and Compliance Review, provided an Independent Review Certification, which confirmed that the government MEO could perform the work required by the PWS at the costs entered on the cost comparison form, and that the costs were calculated in accordance with the A–76 Supplemental Handbook procedures. His certification stated in pertinent part:

I certify that I have reviewed the Performance Work Statement, Management Plan, In-house cost estimates and supporting documentation available prior to the bid opening and, to the best of my knowledge and ability, have determined that: (1) the ability of the in-house MEO to perform the work contained in the Performance Work Statement at the estimated costs included in this cost comparison is reasonably established, and (2) that all costs entered on the cost comparison have been prepared in accordance with the requirements of Circular A–76 and its Supplement.

AR at 37.

The AR shows that defendant complied with all applicable guidelines for verifying that the scope of work was the same for both the MEO and plaintiff. The record also demonstrates that the MEO's proposed costs were realistic and reasonably established. The court finds that the procurement procedure was not carried out in violation of regulation or one of its own procedures.

The court finds that Rust did not demonstrate that the procurement official's decision lacked a rational basis. "[C]ontracting officers are 'entitled to exercise discretion upon a broad range of issues confronting them' in the procurement process." *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed.Cir.2001) (*citing Latecoere Int'l, Inc. v. United States Dep't of Navy*, 19 F.3d 1342, 1356 (11th Cir.1994)). The arbitrary and capricious standard is very deferential and it "requires a reviewing court to sustain an agency action evincing rational reasoning and consideration of relevant factors." *Advanced Data Concepts, Inc. v. United States*, 216 F.3d 1054, 1058 (Fed.Cir.2000). The reviewing court must determine "whether the contracting agency provided a coherent and reasonable explanation of its exercise of discretion." *Id.* (*citing Latecoere Int'l, Inc.* at 1356). The "disappointed bidder bears a heavy burden" of demonstrating that the award decision lacked a rational basis. *See Impresa*, 238 F.3d at 1333 (*citing Saratoga Dev. Corp. v. United States*, 21 F.3d 445, 456 (D.C.Cir. 1994)).

Plaintiff has not met this burden. Plaintiff failed to identify anything in the AR that undermines the procuring officials' determinations that both the MEO and plaintiff proposed an equivalent level of work and that the costs of the MEO were realistic and reasonably established.

### 2. Plaintiff's Attempt to Supplement the Administrative Record

In its motion for summary judgment, plaintiff included two supplemental affidavits not found in the administrative record. Defendant opposes the inclusion of these affidavits on grounds that plaintiff failed to raise this issue at the agency level during its bid protest and now prejudices the government's case.

The court is "generally limited to the administrative record developed by the agency" when reviewing agency decisions. *Marine Hydraulics Int'l, Inc. v. United States*, 43 Fed.Cl. 664, 670 (1999). The record may be supplemented, however, when deemed "necessary to 'preserve a meaningful judicial

review.'" *SDS Int'l*, 48 Fed.Cl. at 765 (*quoting Cubic Appl., Inc.*, 37 Fed.Cl. at 350). The court should consider "whether other materials were considered, or whether the record provides an adequate explanation to the protestor or the court as to the basis of the agency action." *Cubic Applications, Inc. v. United States*, 37 Fed.Cl. 345, 350 (1997).

■ Plaintiff provided the declarations of Steven P. Cotney, an employee of plaintiff, and Robert D. Potter, an expert in government contracts. Both affidavits provide a critique of the solicitation and administrative record. As such, these affidavits were not included in the administrative record, nor were they provided to the agency level review board during the plaintiff's administrative bid protest. Thus, these affidavits do not fit into the category of core documents relevant to a bid protest to be included in the administrative record set forth by this court. General Order No. 38, Appendix I ¶ 17 (*see, e.g.*, General Order 38, Appendix I ¶ 17(u) which would include "the record of any previous administrative or judicial proceedings related to the procurement, including the record of any other protest of the procurement" in an administrative record). Although General Order No. 38 provides the court guidance, this does not close the matter. The court may determine on a case-by-case basis to include materials in the administrative record which are relevant to the solicitation and bid protest. 5 U.S.C. § 706 (2001); General Order No. 38, Appendix I ¶ 17 (annotation).

In the instant matter, the court finds that the inclusion of these affidavits would be prejudicial to defendant's case. Plaintiff failed to provide these affidavits to the agency level review board during its administrative appeal. It would now be unfair for plaintiff to raise these declarations for the first time without cause. *See, e.g., United States Lines, Inc. v. Federal Maritime Comm'n*, 584 F.2d 519, 534 n. 43 (1978) ("[t]he failure to include the information relied upon by the agency in the administrative record, even if later disclosed to the court, is also inconsistent with the Administrative Procedure Act's requirement that review

take place on 'the whole record'") (*quoting* 5 U.S.C. § 706 (1976)).

### CONCLUSION

For the aforementioned reasons, the court hereby *DENIES* plaintiff's Motion for Summary Judgment, and *ALLOWS* defendant's cross-motion for Judgment Upon the Administrative Record. Each party to bear its own costs. The Clerk of the court is directed to enter judgment accordingly.

**IT IS SO ORDERED.**