**INTERNATIONAL RESOURCE RECOVERY, INC.,**
Plaintiff,

v.

**The UNITED STATES, Defendant.**

No. 04–154C.

United States Court of Federal Claims.

Filed Under Seal Feb. 19, 2004 [1].

Reissued: Feb. 24, 2004.

David J. Gierlach, Honolulu, Hawaii, for Plaintiff.

1. This opinion was issued under seal on February 19, 2004. The Court invited the parties to submit proposed redactions by February 23, 2004. No redactions having been received, the Court publishes this opinion *in toto*, correcting errata.

Stephen C. Tosini, U.S. Department of Justice, Commercial Litigation Branch, Civil Division, Washington, D.C., for Defendant. Capt. Scott Flesch, Army Counsel, Washington, D.C. and Darrell Burdasch, Army Counsel, Honolulu, Hawaii, for Defendant.

## ORDER AND OPINION GRANTING PLAINTIFF'S MOTION TO SUPPLEMENT THE ADMINISTRATIVE RECORD

WILLIAMS, Judge.

In this post-award bid protest, Plaintiff International Resource Recovery, Inc. (IRRI) challenges the Army's decision to reject its proposal for refuse pickup services for failure to submit a mobilization plan. Plaintiff contends that its rejection on this basis was arbitrary and capricious because the purpose of a mobilization plan was to explain a contractor's ability to obtain a workforce and transport the necessary vehicles and equipment—information the Army already knew, since IRRI, as the incumbent, had been performing these services for over two years. Moreover, IRRI contends that the Army's past practice in soliciting these types of services had been to not require formal mobilization plans from incumbents. Because of that past practice, IRRI simply represented in its proposal that it "currently had all personnel, vehicles, equipment, tools and containers on hand and in place to perform the services required by this contract," rather than submitting the plan. Complaint ¶ 11.

This matter comes before the Court on Plaintiff's oral motion for leave to supplement the Administrative Record (AR) made during a telephonic status conference on February 12, 2004. In particular, Plaintiff seeks limited discovery in the form of a two-hour deposition of Contracting Officer (CO) Phyllis Koike seeking to elicit whether the CO had deviated from her past practice of not requiring full mobilization plans from incumbent contractors bidding on trash pickup contracts.[2] Defendant opposes Plaintiff's motion, having filed its opposition on February 13, 2004, on the ground that Plaintiff failed to meet its burden of showing bad faith or a gap in the record sufficient to warrant discovery in this type of action. Defendant also pointed out that IRRI's principal, Henry F. Johnson, had filed a protest on this award at the General Accounting Office (GAO) appearing *pro se*, but had inconsistently argued that IRRI had in fact submitted a mobilization plan, a fact which the Army vigorously disputed.[3]

In the event the Court permits discovery, Defendant has requested that the Court: (1) limit the scope of Ms. Koike's deposition as explained in its motion; (2) permit Defendant's counsel to direct Ms. Koike not to answer questions outside the limited scope of the deposition; and (3) allow Defendant to depose Plaintiff's principal, Mr. Johnson, concerning the record in this case. Defendant's Opposition to Plaintiff's Oral Motion to Take Discovery at 1.

Given that the contract performance is scheduled to commence on March 1, 2004, that Plaintiff is scheduled to file its motion for preliminary injunction on February 20,

---

2. Plaintiff had orally requested leave to take the deposition of Contracting Officer Charles Jaber as well, but withdrew this request based upon Government counsel's representation during the February 12 status conference that Mr. Jaber was traveling and unavailable until February 23, 2004.

3. Plaintiff filed its GAO protest which claimed that the agency failed to award to the most advantageous offer on November 8, 2003, and GAO dismissed IRRI's protest for failure to state a valid basis of protest on December 8, 2003. GAO also dismissed a supplemental protest of IRRI alleging an improper nonresponsibility determination and failure to hold discussions as untimely. IRRI did not raise with GAO the issue

of the Army's and the CO's past practice of not requiring mobilization plans from incumbents. However, in a motion for reconsideration filed with GAO on December 15, 2003, IRRI argued that the CO failed to follow her "established past practice of accepting the incumbents [sic] status of having all resources required to perform the services called for in the solicitation as being sufficient so as to not require a Mobilization Plan." AR, Tab 6 at 2. GAO dismissed IRRI's request for reconsideration because IRRI had filed the instant action in this Court and "it is [GAO's] policy not to decide protests where the matter involved is the subject of litigation before a court of competent jurisdiction." AR, Tab 7 at 2.

2004, and that Government counsel is required to travel from Washington, D.C. to Hawaii for the depositions, the Court expedited consideration of Plaintiff's oral motion and issued a summary ruling on February 13, 2004, authorizing limited discovery, in the form of brief depositions of Contracting Officer Koike and IRRI's principal, Mr. Johnson. This opinion further explains the rationale for this ruling.

This is one of those circumstances in which a brief deposition of the CO is necessary to explain the CO's decision to reject Plaintiff's offer. In particular, the gravamen of Plaintiff's bid protest is that the CO arbitrarily and capriciously eliminated IRRI from the competition on the sole ground that it failed to submit a mobilization plan in its proposal, when Plaintiff as the incumbent would not require mobilization, making such a mobilization plan unnecessary. Further, Plaintiff claimed that the same CO as a matter of past practice did not require mobilization plans from incumbents under substantially similar solicitations. Finally, Plaintiff represented that it would continue performing as it had in past years, retaining the same employees and equipment, and that the agency knew the information which would have been contained in such a plan. Plaintiff seeks to depose the CO on the limited topic of her deviation from her past practice of not requiring a mobilization plan from an incumbent.

If Plaintiff could demonstrate that the agency has traditionally deemed mobilization plans for incumbents unnecessary and has permitted incumbent contractors to represent that they would continue performance using the employees and vehicles they were presently using without a formal mobilization plan, the agency's past practice would be relevant in determining whether the CO acted in an arbitrary or capricious manner in rejecting Plaintiff's proposal for failure to submit a plan. Because the agency's past practice in evaluating mobilization plans is not addressed in the Administrative Record, this Court grants Plaintiff's motion, and allows a two-hour deposition of the Contracting Officer. The Court further grants the Gov-

ernment's alternative request to depose IRRI's principal concerning his reliance on the agency's past practice and his representations at GAO regarding IRRI's submission of a mobilization plan. The Court denies the Government's request for limitations on Ms. Koike's deposition.

### Background[4]
#### Plaintiff's Prior Contract

On June 29, 2001, Plaintiff IRRI was awarded Contract No. DAPC50–01–C0027 for refuse pickup at industrial sites on military bases on the island of Oahu, Hawaii. IRRI successfully completed performance of this contract, and the Government exercised options to extend performance.

#### The Solicitation

In February 2003, the Government issued a new solicitation for these services. IRRI was among seven bidders to respond to the solicitation. The solicitation required the submission of technical proposals, a pricing schedule, performance risk information and offeror representations and certifications for commercial items.

The evaluation factors were stated in descending order of importance as follows: technical capability, quality control, performance risk and price.

The solicitation contained the following evaluation factors:

a. Factor 1—Technical Capability:

. . . .

Subfactor (b): Mobilization/Phase–In

. . . .

2. Subfactor (b) Mobilization Plan:

a. Contents. The offeror must explain in detail its plan to successfully accomplish the mobilization process 120 days prior to the contract start date. At a minimum, the proposed plan must include the following:

(1) Detailed procedures of how your firm plans to obtain and transport the necessary containers/compactors/rolloffs to Hawaii, and position them in accordance with

---

4. This background is derived from the Complaint, the attachment to Defendant's Opposition to Plaintiff's Oral Motion to Take Discovery and the Administrative Record filed to date.

Technical Exhibits 1 and 2. The plan must be supported with documentation, including financial capability to acquire the necessary vehicles and equipment with prospective vendor(s). The plan must provide a timetable designating the dates (i.e. day one, day two, etc.) at which events are scheduled to occur (i.e. obtaining equipment, shipment of equipment, assembly of containers, positioning of equipment, hiring of workforce, etc.).

(2) How your firm plans to obtain the necessary labor workforce.

(3) List type and quantity of vehicles to be utilized under this contract. Indicate if vehicles are leased, to be purchased, or owned.

(4) List number of containers owned, or to be acquired for each type of container (i.e. 3–cubic yard, 8–cubic yard, 20 cubic yard rolloffs, 30 cubic yards, 40 cubic yard rolloffs, 30 cubic yard compactors). Indicate timetable for assembly/painting/stenciling of containers, as required.

b. Evaluation Criteria. The Government will evaluate and rate the content, effectiveness and probability of success of the offeror's mobilization plan. Mobilization plans will be considered in the best value trade off decision. Supporting documentation to confirm equipment acquisitions and realistic timetable are major areas of scrutiny by the Government.

AR, Tab 1 at 4–5.

### IRRI's Proposal

In its proposal, Plaintiff represented:

"[t]his bidder currently has all personnel, vehicles, equipment, tools, and containers on hand and in-place to perform the services required by this contract."

Complaint ¶ 11; AR, Tab 2 at 3.

### The CO's Alleged Past Practice

IRRI claims that the Army and the CO had a past practice, documented in a Post-negotiation Objective Memorandum and Price Negotiation Memorandum of June 26, 2001, of not requiring a detailed mobilization plan from an incumbent contractor in conjunction with its proposal. Complaint ¶¶ 10–11. This Post-negotiation Memorandum reflecting negotiations on a prior procurement, on which Plaintiff also bid, involving the same CO, Ms. Koike, addressed the then-incumbent's proposal stating:

(2) Mobilization Plan. The TEC gave this offeror a rating of "Excellent" based on the fact that this offeror is the incumbent and therefore would not require mobilization. This offeror stated it would retain employees who have been performing the work under the existing contract for over two years. It stated that since it owns all the necessary equipment and vehicles, minor changes in the statement of work would have a minimum impact on the mobilization. This offeror also included a general schedule of collection services, by base, as well as detailed schedule by individual location. Since the containers, compactors and roll-offs are already in place, performance risk would be lower with this offeror. However, the Contracting Officer determined that this offeror's plan was no better or no worse than other offerors' plans. Therefore, the Contracting Officer downgraded the rating to "Good."

Defendant's Opposition to Plaintiff's Oral Motion to Take Discovery (Defendant's Opposition), Attachment 1 at 8. Because of its understanding of this past practice, IRRI did not submit a detailed mobilization plan but represented that it had all personnel, vehicles, equipment, tools and containers on hand and in place to perform the required services. Complaint ¶ 11.

The Government notes that this allegation is inconsistent with the position taken by the principal of IRRI appearing *pro se* at the GAO protest. The Government argues:

In its [GAO] protest, Henry F. Johnson, the principal of IRRI, appearing *pro se*, represented that IRRI had submitted a mobilization plan to the Army on July 18, 2003 . . . The "mobilization plan" sheet that

Mr. Johnson submitted to the GAO appeared on a different sheet of paper than any of the other pages that the Army received and was printed in a different size font and style than the surrounding documents in IRRI's submission .... The Army ... never received a mobilization plan from Mr. Johnson .... The Army further explained that IRRI's proposed facts were inconsistent with the contemporaneous facsimile records kept by the Army in the normal course of business.

Defendant's Opposition at 2–3.[5]

Plaintiff contends that the Army rejected IRRI's proposal before performing a best value analysis and treated the failure to provide a mobilization plan as a disqualification. Plaintiff further argues that two contracting officers, Phyllis Koike and Charles Jaber, "indicated a demonstrated animosity and prejudice against IRRI based on personal ill-will and spite." Complaint ¶ 14. In addition, Plaintiff alleged that the two contracting officers repeatedly and systematically issued false statements about its past performance on military contracts.[6]

### Discussion

The Court has jurisdiction over this bid protest pursuant to the Tucker Act, 28 U.S.C. § 1491(b)(1). In a bid protest action, the Court reviews the defendant's decision under the standards in the Administrative Procedure Act (APA). 5 U.S.C. § 706; 28 U.S.C. § 1491(b)(4). The APA directs a reviewing court to overturn agency actions that are arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law. 5 U.S.C. § 706(2)(A).

█ Because bid protest actions are subject to the APA standard of review, the Court is generally limited to the administrative record, unless there is a genuine need to supplement that record arising from the particular circumstances of a case. As this Court recognized in *Cubic Applications, Inc. v. United States,* 37 Fed.Cl. 345, 349 (1997), an agency decision in a bid protest, while subject to the APA standard of review in this Court, is not a traditional agency action which generates the tidy record typically encountered in an APA review context. Rather, as the *Cubic* Court has stated, the agency record is something of a "fiction" on two levels. *Id.* at 350. First, the agency action resulting in a contract award is the reflection of a procurement process which entails submission of competing proposals, discussions with offerors, refinement of those proposals, detailed technical and cost evaluations often performed by different teams of Government evaluators, assessments of past performance, and exchanges among evaluators and vendors which may be captured in the most informal of e-mail traffic. The demarcation of such a record necessarily involves a judgment call on the part of the agency, made *ex parte* and for purposes of litigation. In the words of the *Cubic* Court:

> As a practical matter, however, in most bid protests, the administrative record is something of a fiction, and certainly cannot be viewed as rigidly as if the agency had made an adjudicative decision on a formal record that is then certified for court review. This is true in the contract award context if for no other reason than that, due to the absence of a formal record, the agency has to exercise some judgment in furnishing the court with the relevant documents.

*Cubic,* 37 Fed.Cl. at 350 (quotations omitted); *see Pikes Peak Family Hous., LLC v. United States,* 40 Fed.Cl. 673, 677 (1998) ("Effective

---

5. In its motion for reconsideration at GAO, IRRI contended:
   It is clear that the Agency has consistently held that an incumbent with the equipment in place would not require mobilization.
   It is for this reason that IRRI did not include a Mobilization plan in [its] Original submission. IRRI did fax a copy of [its] Transition plan with [its] Amendment 8, [h]owever the Agency claims that it did not receive it and IRRI is not able to provide independent proof that it did. However the Agency's own past practice has been to evaluate incumbency as meeting the mobilization requirement. I[t] is not permitted to depart from [its] established past practice without informing the Offerors.
   AR, Tab 6 at 3.

6. Plaintiff originally claimed that the Contracting Officers acting within the scope of their employment had defamed the business interests of IRRI, but withdrew this claim during the telephonic conference held on February 12, 2004.

judicial review of an agency's exercise of discretion is irreconcilably at odds with the notion that the reviewing court's inquiry must be confined to an administrative record that is likewise the product of the agency's sole discretion").

Prior to this Court's review of bid protests, there is another opportunity for the agency, as well as protestors and other interested parties, to redefine the parameters of the "record" if a protest is lodged at the General Accounting Office (GAO). The GAO record consists not only of the documentation supporting the agency action being reviewed, but also whatever documentation and argument, including affidavits and live testimony, a party submits to GAO. *See generally* 4 C.F.R. Part 21. In this Court, the GAO record is often submitted wholesale and designated as the administrative record by the Government. This is the second level at which the administrative record becomes a fiction. As this Court recognized in *CCL Serv. Corp. v. United States,* 48 Fed.Cl. 113, 119 (2000), the GAO record which contains after-the-fact explanations of the decision-making process, should not represent the metes and bounds of the administrative record on review.

Recognizing the shortcomings in some administrative records proffered in bid protests, the Court "has adopted a flexible approach both in putting together the evidence that will be considered and in discovery, balancing the limited nature of the court's review with the competing need to recognize potential exceptions to treating the agency's submission as the four corners of the inquiry." *GraphicData LLC v. United States,* 37 Fed.Cl. 771, 780 (1997) *quoting Cubic,* 37 Fed.Cl. at 349. Depositions have been ordered in bid protests where necessary to provide a full record for the Court's review. *See Impresa Construzioni Geom. Domenico Garufi v. United States,* 238 F.3d 1324 (Fed. Cir.2001) (ordering the Court of Federal Claims to allow "an explanation by deposition of the contracting officer's reasons for accepting the [awardee's responsibility] certification" because there was evidence in another tribunal of unethical behavior by a company officer of the awardee); *Galen Med. Associates, Inc. v. United States,* 56

Fed.Cl. 104, 109 (2003) (allowing plaintiff to explore the contours of the administrative record through depositions because the record before it was insufficient with regard to plaintiff's allegation of "a long pattern of questionable activity [that] might be relevant to prove agency bias"); *Antarctic Support Associates v. United States,* 46 Fed.Cl. 145, 148 (2000) (allowing plaintiffs to take four depositions of Government officials involved in the procurement where plaintiffs had alleged that the contracting officers arbitrarily made the award due to favoritism); *Input/Output Tech., Inc. v. United States,* 44 Fed.Cl. 65, 69 (1999) (granting plaintiff's request for a limited deposition of the chairman of the technical review panel to clarify whether the solicitation included a particular requirement); *see also Pikes Peak Fam. Hous., LLC v. United States,* 40 Fed.Cl. 673, 677 (1998) (allowing plaintiff to conduct discovery in a pre-award bid protest, where agency's inclusion of only one offeror in the competitive range and four-month delay in notifying unsuccessful offerors of their exclusion from the competitive range were not adequately explained in the record).

■ As the Court of Federal Claims has held,

Upon a showing of necessity, the administrative record can be supplemented by discovery. Furthermore, the failure of a protester to take discovery or raise questions of fact before the GAO does not generally preclude it from doing so before us.

*J & D Maint. and Services v. United States,* 45 Fed.Cl. 532, 535 (1999) (citations omitted).

■ This Court has also permitted supplementation of the administrative record where the plaintiff has alleged arbitrary and capricious conduct which could not have been reflected in the administrative record. *See GraphicData,* 37 Fed.Cl. at 780 (allowing testimony at an evidentiary hearing on plaintiff's application for a temporary restraining order where plaintiff alleged that agency had improperly supplied awardee with an electronic file, post-award, which had not been listed as Government-furnished property in the solicitation). Similarly, in the instant case, Plaintiff is alleging arbitrary and capri-

cious conduct by the Army and the CO deviating from a past practice allowing incumbents to forego submitting mobilization plans without disqualifying them. Such past practice could not be illuminated by an administrative record limited to the instant procurement. As such, the Court allows the limited discovery sought by Plaintiff.

■ The Court also allows Defendant to take the deposition of Plaintiff's principal to clarify whether Plaintiff submitted a mobilization plan in this procurement, as well as IRRI's reliance on the Army's and the CO's past practice of evaluating incumbents' mobilization plans, as these matters are not fully explained by the record.

## *CONCLUSION*

**IT IS HEREBY ORDERED THAT:**

1. Plaintiff's oral motion to supplement the Administrative Record made on February 12, 2004, is **GRANTED**. Plaintiff may take the deposition of Contracting Officer Phyllis Koike.

2. Defendant's request to depose IRRI's principal, Henry F. Johnson, is **GRANTED**. Defendant may depose IRRI's principal concerning his reliance on the agency's past practice and his representations regarding IRRI's submission of a mobilization plan at GAO. Defendant's request to limit the scope of Ms. Koike's deposition is denied, as is Defendant's request to direct her not to answer questions beyond the permitted scope.

3. Both of these depositions shall be taken in Hawaii at times and in places convenient to the deponents, but they shall be concluded no later than **February 19, 2004**.

4. Each examination by *opposing* counsel shall not last longer than two hours, excluding objections or comment by counsel.[7]

5. Each deposition shall be limited to the subject matter of this bid protest action, including but not limited to: the

agency's past practice of evaluating mobilization plans or the lack thereof of incumbent contractors in trash pick-up contracts; Plaintiff's reliance on such past practice in submitting the proposals at issue; and inquiry into whether Plaintiff in fact submitted a mobilization plan in this procurement.

6. The Court has issued this Opinion under seal because the Administrative Record as filed purported to contain protected material, and the parties have not yet submitted their proposed protective order to the Court. The parties are directed to file any proposed redactions to this Opinion with the Court no later than February 23, 2004.

---

7. Should counsel defending either deposition desire to elicit additional testimony relevant to this bid protest, the Court will allow this, but, in each instance, such examination shall not exceed one hour.