SOFTWARE ENGINEERING
SERVICES, CORPORATION,
Plaintiff,

v.

UNITED STATES, Defendant,

and

Booz Allen Hamilton, Inc.; ITT Corporation, Advance Engineering & Sciences Division; Csss.Net, Defendant–Intervenors.

No. 08–795C.

United States Court of Federal Claims.

Filed Under Seal: Feb. 3, 2009.

Reissued for Publication: Feb. 5, 2009.[1]

---

1. The Court issued this opinion under seal on February 3, 2009, and gave the parties until February 10, 2009 to submit any proposed redactions of competition-sensitive, proprietary, confidential or other protected information. On Feb-ruary 5, 2009, Plaintiff and Defendant informed the Court that they had no proposed redactions. Accordingly, the decision is released for publication in its entirety.

Lawrence Block, Stinson Morrison Hecker LLP, Washington, D.C., for Plaintiff.

Patryk J. Drescher, with whom were Gregory G. Katsas, Assistant Attorney General, Jeanne E. Davidson, Director, and Deborah A. Bynum, Assistant Director, United States Department of Justice, Commercial Litigation Branch, Civil Division, Washington, D.C., W. Michael Rose and Michael G. McCormack, Air Force Legal Operations Agency, of Counsel, for Defendant.

Paul F. Khoury, with whom were Philip J. Davis and Tracye Winfrey Howard, Wiley Rein LLP, Washington, D.C., for Defendant–Intervenor Booz Allen Hamilton, Inc.

Francis E. Purcell, Jr., with whom was Thomas O. Mason, Williams Mullen, McLean, Virginia, for Defendant–Intervenor ITT Corporation, Advance Engineering & Sciences Division.

John R. Tolle, with whom were Bryan R. King and Ralph C. Thomas III, Barton, Baker, Thomas & Tolle, LLP, McLean, Virginia, for Defendant–Intervenor CSSS.Net.

## OPINION AND ORDER

WHEELER, Judge.

This post-award bid protest arises from the United States Air Force's second procurement of advisory and assistance services ("A & AS") for the United States Strategic Command ("USSTRATCOM" or the "Command"), known as USSTRATCOM systems and mission support ("USAMS") II. Plaintiff Systems Engineering Services, Corporation ("SES"), is a small, disadvantaged, veteran-owned business located in Bellevue, Nebraska that has been performing federal contracts since its inception in 1991. SES filed this protest on November 5, 2008, challenging the Air Force's award of six indefinite delivery/indefinite quantity ("IDIQ") contracts for USAMS II. SES voluntarily dismissed a Government Accountability Office ("GAO") protest of the same procurement before commencing this action. Three of the awardees, Booz Allen Hamilton, Inc. ("BAH"), ITT Corporation, Advance Engineering & Sciences Division ("ITT"), and CSSS.Net, have intervened on Defendant's side.

SES challenges the Air Force's technical evaluation of its proposal, where the evaluators gave SES three "unacceptable" ratings, effectively eliminating SES from the competition. SES alleges that the Air Force failed to consider significant portions of its technical proposal, and essentially ignored SES's successful performance on the USAMS I contract. Defendant voluntarily stayed performance of the six USAMS II contracts pending the Court's ruling in this protest, and submitted the Administrative Record on November 14, 2008. Defendant filed a motion for judgment on the Administrative Record pursuant to Rule 52.1 of the Court of Federal Claims ("RCFC") on December 3, 2008, and Plaintiff filed a response and cross-motion for judgment on the Administrative Record on December 17, 2008. Defendant and BAH filed reply briefs on December 23, 2008. On that same day, Defendant also filed a motion to strike three affidavits included in Plaintiff's response and cross-motion. Plaintiff filed a motion to supplement the Administrative Record on January 7, 2009, and Defendant replied one day later. The Court heard oral argument on the pending motions on January 9, 2009. At the conclusion of the oral argument, the Court authorized the Air Force to proceed with the performance of the six awarded contracts, due to their importance to the national defense. Hr'g Tr. 66, Jan. 9, 2009.

For the reasons stated below, the Court finds that SES's protest is without merit. While SES raises multiple protest grounds, its challenge to the Air Force's evaluation generally amounts to mere disagreement with the agency's reasonable technical determinations. Where rational technical assessments are involved, the Court will not substitute its own judgment for that of the Air Force. See E.W. Bliss Co. v. United States, 77 F.3d 445, 449 (Fed.Cir.1996) ("[T]echnical ratings ... involve discretionary determinations of procurement officials that a court will

not second guess.") (citation omitted). SES also relies upon its successful performance of its USAMS I contract, but the Air Force was required to consider only the contents of SES's proposal. *See Int'l Res. Recovery, Inc. v. United States,* 60 Fed.Cl. 1, 6 (2004) ("[I]t is well established that all offerors, including incumbents, are expected to demonstrate their capabilities in their proposals.") (citation omitted). Furthermore, the Court declines to supplement the Administrative Record with the affidavits of John Alspaugh and Roberts Watts because they had no bearing on the agency's award decision. *See Rust Constructors Inc. v. United States,* 49 Fed.Cl. 490, 496–97 (2001). However, because the affidavit of Jim Bridges alleges bias, it contains information that would be omitted from the record unless the Court allowed its inclusion. Accordingly, the Court will permit this affidavit as a supplement to the Administrative Record. *See Int'l Res. Recovery, Inc. v. United States,* 59 Fed.Cl. 537, 542 (2004).

In summary, Defendant's motion for judgment on the Administrative Record is GRANTED, and SES's cross-motion for judgment on the Administrative Record is DENIED. Defendant's motion to strike Plaintiff's affidavits is GRANTED IN PART and DENIED IN PART, and Plaintiff's motion to supplement the Administrative Record is GRANTED IN PART and DENIED IN PART.

*Background*

USSTRATCOM, based at Offutt Air Force Base, Nebraska, protects the United States from many global threats, including nuclear attack. Administrative Record ("AR") 418. It serves as a unified command under the Department of Defense ("DOD") and its missions include: space operations; information operations; integrated missile defense; global command and control; intelligence, surveillance and reconnaissance; global strike; and strategic deterrence. *Id.* USSTRATCOM is also the lead command for integration and synchronization of DOD-wide efforts in combating weapons of mass destruction. *Id.* To fulfill its missions, the Command engages private contractors to provide A & AS in the form of support

technical studies, system engineering, and technical analyses. AR 2.

### A. *The Solicitation*

The Air Force issued RFP No. FA4600–07–R–0005 (the "Solicitation" or "RFP") on February 15, 2008, seeking offers for A & AS for the Command. AR 394. Referred to as USAMS II because it is the second such acquisition by the Air Force, the procurement has an expected value of $900 million over a five-year period. *See* AR 2, 5. The Solicitation contemplated the award of six IDIQ contracts using a simplified, best-value, source selection under Federal Acquisition Regulation ("FAR") Subpart 15.3. AR 506. Each contract would have a one-year base period with the potential for four one-year option periods. AR 2.

Section L of the Solicitation, containing the proposal preparation instructions, cautioned offerors to comply strictly with the proposal requirements. AR 494. Each offeror was to "assume that the Government has no prior knowledge of the Contractor's capabilities and experience, and will base its evaluation on the information presented in its proposal." AR 494–95.

Section L instructed offerors to provide proposals in four separate volumes: Volume I, Price; Volume II, Mission Capability; Volume III, Past Performance; and Volume IV, Contract Documentation. AR 495–96. The RFP required each volume to be written on a stand-alone basis and warned offerors that information not contained in a designated volume would be assumed omitted from the entire proposal:

> To the greatest extent possible, each volume shall be written on a stand-alone basis so that its contents may be evaluated with minimal cross-referencing to other volumes of the proposal. Cross-referencing within a proposal volume is permitted where its use would conserve space without impairing clarity. The Offeror shall provide a cross-reference matrix indicating the corresponding proposal paragraph in that section and/or volume which addresses the referenced item. Information required for proposal evaluation that is not found in its

designated volume will be assumed omitted from the proposal.

AR 497.

With regard to the contents of Volume II, Mission Capability, offerors were to describe how they intended to perform tasks in the Performance Work Statement ("PWS") and, if desired, could cite to directly-related current or past performance:

> Management/Technical proposal shall present a clear, concise description of how the Offeror plans to implement and manage the efforts described in the PWS, what resources will be used, and how the work will be performed. The Offeror must demonstrate proper planning, organizing, and reporting procedures to provide good quality control measures. The Offeror may cite directly applicable past or present performance where such experience clarifies discussion. Similarly, lessons learned from comparable present and past experience may be mentioned.

AR 499.

The Solicitation's evaluation criteria, provided in Section M, called for "a simplified best value source selection that permits a tradeoff between price and past performance in reaching the award decision. . . ." AR 506. The Air Force was to select "the best overall offerors, based upon an assessment of Price, Mission Capabilities, and Past Performance." *Id.* In accordance with the performance price tradeoff ("PPT") framework, the evaluation of the proposals was to follow three steps. *Id.* Evaluators first would rank the proposals by price. *Id.* Second, the Air Force would evaluate the ten lowest-priced proposals for technical acceptability. *Id.* Third, and finally, the Air Force would assess the past performance of the ten lowest priced, technically acceptable offers. *Id.* Using this method, the Air Force intended to award six IDIQ A & AS contracts under the Solicitation. *Id.* According to the RFP, these awards would go to "the offerors . . . whose proposals conform to the solicitation's requirements . . . and are judged, based on the evaluation factors and sub-factors, to represent the best value to the Government." *Id.*

Consistent with the three-step evaluation process, the Solicitation called for the Air Force to evaluate the offers using three factors:

Factor 1: Price

Factor 2: Mission Capability

Factor 3: Past Performance

AR 508. The Mission Capability Factor was broken down into three sub-factors:

Sub-factor 1: Program Management

Sub-factor 2: Technical Requirements Sub-factor

3: Small Business Participation

AR 509. The Air Force's technical team intended to evaluate each technical proposal on a pass/fail basis for each of these Mission Capability sub-factors. *Id.* If a sub-factor was rated as "unacceptable," the overall Mission Capability Factor would be considered "unacceptable" and the offeror would receive a "fail" rating. *Id.* For Sub-factor 2, Technical Requirements, the Air Force intended to evaluate the offerors' abilities to "provide [A & AS] for Management and Professional Support Services, Studies, Analyses and Evaluations, and Engineering and Technical Services for the following USSTRATCOM mission areas. . . ."

Combating Weapons of Mass Destruction

Global Command and Control

Global Strike

Information Operations

Integrated Missile Defense

Intelligence, Surveillance, and Reconnaissance

Nuclear Deterrence

Space Operations

Strategic Deterrence

AR 509. As a standard, evaluators were to assess whether the offerors "[d]emonstrate[d] an ability to execute the USAMS II mission without introducing unacceptable risk, and provide[d] appropriate insight, technical capabilities, and mitigation for continuity of operations." *Id.* If the evaluators determined any technical proposal to be "not acceptable," the offer was no longer considered for award and Step 2 was repeated for the next lowest priced offer. AR 507.

The Air Force intended to perform this evaluation in accordance with Air Force FAR

Supplement ("AFFARS") Informational Guidance 5315.101–1. AR 509. This regulation required that the evaluation approach be "clearly communicated and strictly followed throughout the evaluation process." AR 309. Evaluators were to "[u]se only the criteria identified in the solicitation to determine technical acceptability[,]" and an offeror needed to pass all criteria to be considered technically acceptable. *Id.* Evaluators were to rate each proposal "acceptable," "reasonably susceptible of being made acceptable," or "not acceptable." *Id.*

### B. *Evaluation of Offers*

The Air Force received eleven offers in response to the RFP, including proposals from SES, BAH, ITT, and CSSS.Net. AR 251. While SES was ranked within the six lowest-priced offers for Factor 1, AR 253, the Air Force found SES to be technically unacceptable under Factor 2, AR 254–55, 7345. The technical evaluation team concluded that SES passed the Program Management and Small Business Participation Sub-factors but that SES's proposal failed to demonstrate the minimum requirements to support the Command in three of the nine mission areas under Sub-factor 2: Combating Weapons of Mass Destruction, Global Strike, and Strategic Deterrence. AR 7344–45. The evaluators determined that SES demonstrated only its ability to provide information technology ("IT") services in those mission areas, rather than an ability to provide management, analyses, or engineering support to the Command. AR 7344–45.

With regard to Combating Weapons of Mass Destruction, the evaluators found "no indication of [SES's] ability to provide management, analyses, or engineering ('AS & S') support for the Commander, USSTRATCOM, on the complexities associated with the CWMD mission. . . ." AR 7344. Likewise, the evaluators determined for the Global Strike mission, that SES did not demonstrate its ability "to provide management, analyses, or engineering" for USSTRATCOM and its Commander on "complexities associated with the GS mission. . . ." AR 7345. The evaluators also found that SES "failed to demonstrate the capability to perform studies, and

analyze and evaluate tasks relating to the [Strategic Deterrence] mission." *Id.* The evaluators added, "SES consistently documented the same capability to provide IT and IT-related engineering services, but was deficient in providing evidence that they understood the USSTRATCOM strategic deterrence mission." *Id.*

### C. *Contract Awards and GAO Protest*

The Source Selection Authority determined that discussions were not required based upon the evaluation of initial proposals and, on July 25, 2008, the Air Force awarded six IDIQ contracts. Those receiving contracts were: BAH, ITT, CSSS.Net, MacAulay–Brown, Inc., Science Application International Corporation, and CACI Technologies, Inc. AR 259. SES received a debriefing from the Air Force on July 29, 2008. AR 7773.

SES filed a protest at GAO on August 8, 2008, and the Air Force suspended performance of the awarded contracts. AR 12002–3. SES, on September 4, 2008, filed a supplemental protest comparing its evaluation to that of another offeror, AR 11887, which GAO dismissed eight days later, AR 11898. SES requested that GAO reconsider its dismissal of the supplemental protest, AR 11953, and filed a second supplemental protest at GAO challenging the composition of the technical evaluation team on September 16, 2008, AR 11900–01. On September 26, 2008, GAO dismissed the request for reconsideration and dismissed the second supplemental protest. AR 11965, 11968. SES sought reconsideration of the denial of its second supplemental protest, AR 11969, but, on October 31, 2008, before GAO could rule on this request, SES voluntarily dismissed the protest, AR 11978. On November 3, 2008, SES submitted its notice of intent to file with this Court and GAO advised the parties that the record was closed. AR 11980–83.

SES filed the present action in this Court on November 5, 2008. Pending before the Court are Defendant's and Plaintiff's motions for judgment on the Administrative Record, Defendant's motion to strike, and Plaintiff's

motion to supplement the Administrative Record.

*Discussion*

### A. *Jurisdiction and Standard of Review*

The Tucker Act, 28 U.S.C. § 1491(b)(1), as amended by the Administrative Dispute Resolution Act of 1996 (ADRA), Pub.L. No. 104–320, §§ 12(a)-(b)(1996), confers upon the Court of Federal Claims jurisdiction over pre-award and post-award bid protests.

In such proceedings, the standard of review used by the Court is whether the agency action was " 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.' " *Banknote Corp. of Am., Inc. v. United States,* 365 F.3d 1345, 1350–51 (Fed.Cir.2004) (quoting *Advanced Data Concepts, Inc. v. United States,* 216 F.3d 1054, 1057–58 (Fed.Cir.2000)); *see also* 28 U.S.C. § 1491(b) (describing the Court's bid protest jurisdiction). Thus, if a procurement decision lacks a rational basis or if an agency's decision-making constitutes a violation of regulation or procedure, the Court should set aside that agency action. *Impresa Construzioni Geom. Domenico Garufi v. United States,* 238 F.3d 1324, 1332 (Fed.Cir.2001) (citation omitted). Plaintiff bears the burden of proving sufficient error in the procurement process. *Grumman Data Sys. Corp. v. Dalton,* 88 F.3d 990, 1000 (Fed.Cir.1996) (citing *CACI Field Servs., Inc. v. United States,* 854 F.2d 464, 466 (Fed.Cir.1988)).

"The court 'may not substitute its judgment for that of the agency' if the agency's decision is reasonable." *Benchmade Knife Co., Inc. v. United States,* 79 Fed.Cl. 731, 735 (2007) (citation omitted). "Agency technical evaluations, in particular, should be afforded a greater deference by the reviewing court." *Id.* at 735 (citation omitted); *see also* E.W. Bliss, 77 F.3d at 449 ("[T]echnical ratings . . . involve discretionary determinations of procurement officials that a court will not second guess."); *Omega World Travel, Inc. v. United States,* 54 Fed.Cl. 570, 578 (2002) ("It is well settled that contracting officers are given broad discretion with respect to evaluation of technical proposals.") (citation omitted).

When ruling on a motion for judgment on the administrative record under RCFC 52. 1, the Court must determine "whether, given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence in the record." *A & D Fire Protection, Inc. v. United States,* 72 Fed.Cl. 126, 131 (2006) (citing *Bannum, Inc. v. United States,* 404 F.3d 1346, 1356 (Fed.Cir.2005)). Where necessary, the Court will make findings of fact. *Id.* (citing *Bannum,* 404 F.3d at 1356). "The resolution of cross-motions for judgment under Rule 52.1 is akin to an expedited trial on 'the paper record.' " *CHE Consulting, Inc. v. United States,* 78 Fed.Cl. 380, 387 (2007) (citing *A & D Fire Protection,* 72 Fed.Cl. at 131), aff'd No.2007–5172, 552 F.3d 1351, 2008 WL 5397566 (Fed.Cir. Dec.30, 2008). Thus, the inquiry made by the Court is whether, given all the disputed and undisputed facts, the plaintiff has met its burden of proof that the contracting officer's decision was arbitrary, capricious, or contrary to law. *Tech Sys., Inc. v. United States,* 50 Fed.Cl. 216, 222 (2001) (citing *CCL Serv. Corp. v. United States,* 48 Fed.Cl. 113, 119 (2000)).

### B. *Supplementation of the Administrative Record*

The Court has discretion to supplement the administrative record in limited circumstances. *See Impresa,* 238 F.3d at 1338 (finding supplementation permissible where "required for meaningful judicial review") (citation omitted); *see also Cubic Applications, Inc. v. United States,* 37 Fed.Cl. 339, 342 (1997) (adopting list of limited circumstances where supplementation may be allowed). Generally, the Court will supplement the administrative record when it is necessary for a full and complete understanding of the issues. *Blue & Gold Fleet, LP v. United States,* 70 Fed.Cl. 487, 494 (2006) (citation omitted), aff'd 492 F.3d 1308 (Fed.Cir.2007); *see also Impresa,* 238 F.3d at 1338–39 (ordering supplementation with contracting officer's deposition testimony to fill gaps concerning factors agency considered in reaching decision). Otherwise, the Court must confine its review to the administrative record already in existence. *Cubic Applications,* 37 Fed.Cl. at 342 ("The court's inquiry is therefore based on an examination

of the 'whole record' before the agency; that is, all the material that was developed and considered by the agency in making its decision.") (quoting *Camp v. Pitts*, 411 U.S. 138, 142, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973)); *see also* Rust *Constructors*, 49 Fed.Cl. at 497 (denying supplementation of the record with affidavits that were not "core documents relevant to a bid protest").

In the present case, Plaintiff included three post-decision affidavits as attachments to its response and cross-motion for judgment on the Administrative Record. These attachments were the Affidavits of Jim Bridges, John Alspaugh, and Robert Watts. Pl.'s Resp. & Mot. for J. on the AR, Exs. D, F, and G, Dec. 12, 2008. While not also filing a motion to supplement the Administrative Record, SES explained, "[t]he affidavits submitted with this motion are not intended to expand the administrative record. . . ." *Id.* at 34 n. 9. As for the substance of these documents, the affidavits of Messrs. Alspaugh and Watts discuss the alleged interplay and overlap between the USSTRATCOM mission areas and the affiants' respective rationales for stating that SES should have received "acceptable" ratings for all nine mission areas. *See* Alspaugh Aff. ¶¶ 10–15; Watts Aff. ¶¶ 8–12. The Affidavit of Mr. Bridges alleges bias or potential conflict of interest with one agency technical evaluator. Bridges Aff. ¶¶ 6–11.

After the submission of these documents, Defendant filed a motion to strike. In addition to noting that Plaintiff failed to file a motion to supplement the Administrative Record, Defendant asserts that the documents were created after the filing of this action. Def.'s Mot. to Strike Affs. 1, Dec. 23, 2008. As such, the affidavits cannot be part of the Administrative Record which, pursuant to 28 U.S.C. § 1491(b)(4), defines the scope of judicial review in bid protests. *Id.* Defendant further contends that the documents contain inadmissible statements and opinions. *Id.* Specifically, Defendant explains that the Bridges Affidavit contains inadmissible hearsay statements of the technical evaluator and the Affidavits of Messrs. Alspaugh and Watts include inadmissible opinion testimony. *Id.* at 4. In response to

Defendant's motion to strike, Plaintiff filed a motion to supplement the Administrative Record.

■ The Court finds that the Affidavits of Messrs. Alspaugh and Watts are not "core documents" that should be included in the Administrative Record. *See Rust Constructors*, 49 Fed.Cl. at 497. Plaintiff contends that these affidavits contain information regarding the interplay of the nine mission areas which "is critical and is 'necessary to help explain an agency's decision and thereby facilitate meaningful judicial review of the agency decision.'" Pl.'s Mot. to Supp. the AR 4 (quoting *Orion Int'l Techs. v. United States*, 60 Fed.Cl. 338, 343 (2004)). However, these documents were created after the filing of this action and have no bearing on the technical team's evaluation of SES's proposal. Rather, the affidavits provide the opinions of two SES employees on how they would have conducted the evaluation. These opinions are not necessary for the full and complete understanding of the issues in this protest. *See Blue & Gold Fleet*, 70 Fed.Cl. at 494. The opinion testimony of two SES employees cannot be considered critical to the review of the decision of the technical evaluation team.

Plaintiff contends that the record may be supplemented with information that, by its very nature, would be omitted from a paper record. Pl.'s Mot. to Supp. the AR 2 (citing *Int'l Res. Recovery*, 59 Fed.Cl. at 542). SES then argues that information contained in the Bridges Affidavit regarding a potential conflict of interest or bias is exactly the type that would not normally be found in a paper record. *Id.* at 4. Plaintiff is correct that the alleged unpleasant working relationship between one evaluator and Mr. Bridges is the type of information that would not typically appear in the Administrative Record. Accordingly, the Court permits Plaintiff to supplement the Administrative Record with the affidavit of Mr. Bridges. However, a disagreement from 20 years ago is not of sufficient weight for the Court to question the Air Force's technical evaluation. (*See* infra Section C, 3).

554

C. *The Air Force's Evaluation of SES's Proposal Was Not Arbitrary, Capricious, or Contrary to Law.*

SES contends that the methodology used by the Air Force in evaluating SES "led to an arbitrary and capricious result with no basis in fact with regard to its A & AS capability that it failed in three mission areas." Pl.'s Resp. & Mot. 15. In essence, Plaintiff argues that the Air Force's evaluation conclusions are so disparate from the SES proposal, that they lack a rational basis. Hr'g Tr. 38.

SES proffers two chief arguments supporting its claim that the Air Force arbitrarily and capriciously assigned it "unacceptable" ratings in the Combating Weapons of Mass Destruction, Strategic Deterrence, and Global Strike mission areas. First, Plaintiff contends that, while its proposal addressed each of the task requirements described in the RFP, the Air Force failed to consider the relevant proposal sections. Pl.'s Resp. & Mot. 17, 19. Second, SES asserts that the Air Force arbitrarily and capriciously failed to consider SES's current and past performance on USAMS I during the technical evaluation. *Id.* at 17.

1. *The Air Force Properly Evaluated SES's Mission Capability.*

██ SES contends that the Air Force acted arbitrarily and capriciously by failing to consider at least 17 references in SES's Volume II that evidenced its expertise in the three "unacceptable" mission areas. *Id.* at 19. SES provides three proposal citations evidencing experience in Combating Weapons of Mass Destruction and seven each for Global Strike and Strategic Deterrence. *Id.* at 20–26. SES, however, argues that "[n]ot one word is mentioned in any technical evaluator's notes on the seventeen points...." *Id.* at 19 (citing AR 7303–7341). Rather, SES alleges that the evaluators focused almost exclusively on three tables found in SES's Volume II. *Id.*

██ It is beyond cavil that "technical ratings ... involve discretionary determinations of procurement officials that a court will not second guess." *E.W. Bliss,* 77 F.3d at 449 (citation omitted); *see also Benchmade Knife,* 79 Fed.Cl. at 735 ("The court 'may not substitute its judgment for that of the agency' if the agency's decision is reasonable.") (citation omitted). Offerors carry the burden of presenting "an adequately written proposal, and an offeror's mere disagreement with the agency's judgment concerning the adequacy of the proposal is not sufficient to establish that the agency acted unreasonably." *United Enter. & Assocs. v. United States,* 70 Fed.Cl. 1, 26 (2006) (citation omitted).

SES's protest ground amounts to mere disagreement with the Air Force's technical evaluation. The individual technical evaluations provide extensive discussions regarding the Air Force's determination that SES's proposal failed to demonstrate its capabilities to perform under the three mission areas. AR 7314–16, 7318–20, 7322–24, 7328–33. Rather than demonstrating that the Air Force's discretionary decision in the technical evaluation was unreasonable, SES identifies those sections of its proposal it believes satisfy the evaluation criteria. The 17 references cited by SES do not render the Air Force's discretionary decision irrational. SES has only offered its own opinion on how its proposal should have been evaluated by the Air Force, merely disagreeing with the Air Force's reasonable decision. This Court is satisfied that the Air Force acted reasonably when evaluating SES, and will not substitute its judgment for that of the agency. *See E.W. Bliss,* 77 F.3d at 449; *Benchmade Knife,* 79 Fed.Cl. at 735.

Furthermore, evaluators need not reference each relevant page of a proposal in order for an evaluation to be proper. This Court, in *E.W. Bliss Company v. United States,* stated that a technical evaluation was proper even if the agency did not reference certain portions of the plaintiff's proposal. 33 Fed.Cl. 123, 143 (1995), aff'd 77 F.3d 445 (1996). The Court explained that the applicable regulations "concerning documenting the technical evaluation, d[id] not require this level of detail." *Id.* In the present case, the regulations governing the Air Force's technical evaluation suggest that the sub-factor evaluations should include "a brief descrip-

tion of what is being offered, and a discussion of whether the proposal exceeds, meets, or fails to meet performance or capability requirements." AR 295 (AFFARS Mandatory Procedure ("MP") 5315.3 n. 59). A review of the individual and consensus technical evaluations for SES demonstrate that the Air Force satisfied this requirement. *See* AR 7312–33, 7343–45.

SES asserts that *E.W. Bliss* is distinguishable from the present case because there, the plaintiff challenged the composition of the summary evaluation document rather than the individual evaluators' notes. Hr'g Tr. 62. This fact, however, does not render *E.W. Bliss* distinguishable from the present case. The *E.W. Bliss* case holds that an agency need not discuss every portion of an offeror's proposal so long as its evaluation documents comply with the applicable evaluation regulations. *See* 33 Fed.Cl. at 143. Here, just as in E.W. Bliss, the applicable regulations did not require the Air Force to discuss every potentially relevant portion of an offeror's proposal. Instead, the Air Force provided a brief description of what SES offered and a discussion regarding SES's failure to meet the technical requirements, thereby complying with the applicable regulations. *See* AR 295, 7312–33, 7343–45.

### 2. *SES Was Required to Demonstrate its Capabilities in its Proposal and Could not Rely Upon its Status as an Incumbent.*

In its response and motion for judgment on the Administrative Record, SES argues that, because its past and current performance demonstrates its expertise in the three mission areas in which it received "unacceptable" ratings, the technical evaluation was flawed. SES contends that the technical evaluation team acted arbitrarily and capriciously when it failed to take any rational step to determine whether SES's performance in USAMS I demonstrated its expertise in the three mission areas. Pl.'s Resp. & Mot. 27.

Essentially, SES argues that the Air Force acted arbitrarily and capriciously by failing to reconcile SES's successful performance of USAMS I task orders and the "unaccepta-

ble" rating for SES's USAMS II proposal. *Id.* at 15. Plaintiff argues that its knowledge and ability to perform the required A & AS services for the three mission areas is demonstrated by its superior performance of A & AS task orders related to the same mission areas under the predecessor contract, US-AMS I. *Id.* Quoting objectives from its US-AMS I task order RFP, SES concludes that this task order "demonstrates its accepted expertise under USAMS I for the Strategic Deterrence mission area and the Global Strike mission area." *Id.* at 15–17. Given the asserted interplay and overlap of the mission areas, SES concludes that the USAMS I task order demonstrates SES's expertise in the third "unacceptable" mission area, Combating Weapons of Mass Destruction. *Id.* at 17. To support this argument, Plaintiff explains that, in accordance with the RFP, it made repeated references to its incumbent contractor status in Volume II, providing 13 instances. *Id.* at 27–28. Further, SES argues that its Volume II Cross–Reference Index indicated that ten pages of Volume III, Past Performance, should be reviewed for the Volume II, Mission Capability, Sub-factor 2, Technical Requirements, evaluation. *Id.* at 28.

█ The Air Force, however, acted reasonably in finding SES's incumbent status an insufficient substitute for demonstrating its ability to perform the three mission areas in its proposal. "[I]t is well established that all offerors, including incumbents, are expected to demonstrate their capabilities in their proposals." *Int'l Res. Recovery,* 60 Fed.Cl. at 6 (agency rejection of incumbent proposal was reasonable when incumbent failed to submit a mobilization plan in accordance with RFP, claiming it already was mobilized as the incumbent) (citation omitted); *see also PGBA, LLC v. United States,* 60 Fed.Cl. 196, 209–10 (2004) (record supported lowered rating for technical subfactor based on the incumbent's "less-than-thorough proposal"), aff'd 389 F.3d 1219 (2004). Offerors are charged with preparing an adequately written proposal. *Westech Int'l, Inc. v. United States,* 79 Fed.Cl. 272, 296 (2007) (citation omitted).

Thus, SES was required to demonstrate its capabilities within the proposal, and could not rely upon its incumbent contract per-

formance as a substitute for information omitted from its proposal. *See Int'l Res. Recovery*, 60 Fed.Cl. at 6; *PGBA, LLC*, 60 Fed.Cl. at 209–10. SES was charged with adequately drafting its proposal to ensure compliance with the RFP. *See Westech Int'l*, 79 Fed.Cl. at 296. Further, as SES did not include a comparison between the USAMS I task order and the USAMS II mission areas in its proposal, the Air Force reasonably did not consider such a comparison. *See Int'l Res. Recovery,* 60 Fed.Cl. at 6

The Solicitation specifically warned SES that it would be evaluated solely on the contents of its proposal, rather than on extraneous information such as the task orders that it is currently performing under USAMS I. SES was on notice that it was required to submit a proposal that directly addressed its expertise in the mission areas, and could not rely solely on its past and current performance on USAMS I. While SES was free to "cite directly applicable past or present performance[,]" it was required to provide a "concise description of how [it] plan[ned] to implement and manage the efforts described in the PW S . . . ." AR 499. The RFP was unambiguous in requiring that each offeror submit a "stand-alone" proposal, specifically noting that "[i]nformation required for proposal evaluation that is not found in its designated volume will be assumed omitted from the proposal." AR 497. Further, SES was to assume that the Air Force had no prior knowledge regarding its experience, such as its performance on USAMS I, because the evaluation would be conducted based upon SES's proposal. *See* AR 494–95. The RFP thus required SES to address directly its ability to perform tasks involving the three mission areas to ensure that the technical evaluators would consider the information. Failure to do so, as SES ultimately did, would result in an assumption that such information did not exist. *See* AR 497.

The Air Force also was not obligated to consider the ten Volume III pages as part of the Sub-factor 2 evaluation. While SES now argues that the Volume III pages in its Cross–Reference Matrix were intended to be part of the Mission Capability, Sub-factor 2 evaluation, the Cross Reference Matrix

shows that these pages were instead intended to be part of the Factor 3 Past Performance evaluation. The Matrix lists Section M3.4.2.4.1.2 as the "RFP Reference" related to these pages. AR 7292. This Section, entitled "Sub-factor Two–Technical Requirement Relevancy Criteria," is part of the Factor 3 Past Performance evaluation criterion rather than the Factor 2 Mission Capability evaluation criterion. AR 513. As SES's proposal intended for these pages to be part of the Factor 3 evaluation, the Air Force did not act arbitrarily or capriciously to the extent it did not consider them as part of the Factor 2 evaluation.

### 3. *SES's Additional Arguments are Meritless.*

In addition to the two challenges discussed above, SES proffers three other protest grounds. Specifically, Plaintiff argues that: (1) none of the individuals on the technical evaluation team had expertise regarding the three mission areas in question; (2) the nine mission areas are so intertwined that the Air Force could not reasonably assign "acceptable" ratings for some areas and "unacceptable" ratings for others; and (3) the Air Force failed to follow the evaluation scheme. SES's additional arguments are without merit.

Plaintiff argues that the composition of the technical evaluation team led to an arbitrary and capricious evaluation because of a lack of representation on the team for the three mission areas in which the Air Force deemed SES "unacceptable." Pl.'s Resp. & Mot. 30. SES suggests that, had the evaluators possessed expertise in these three areas, the Air Force would have found its proposal to be "acceptable." *Id.* at 32–33. Plaintiff, however, does concede that the compositions of evaluation teams are generally not subject to protest. *Id.* at 30. Consistent with its understanding, SES fails to cite a single case or legal authority to support its protest ground.

■ The composition of an agency's evaluation team is a matter in which the agency has great discretion. As the GAO previously has explained, the composition should not be questioned unless the protester alleges bad faith, conflict of interest, or actual bias. *Al-*

*can Envtl., Inc.*, B–275859.2, Apr. 11, 1997, 97–1 CPD ¶ 139 (citation omitted). Thus, as the expertise of the evaluators is unrelated to bad faith, conflict of interest, or bias, this Court will not question the composition of the technical evaluation team. However, in a footnote, SES asserts that one evaluator had an unpleasant professional experience with the founder and president of SES almost 20 years prior to the evaluation, indicating bias and a potential conflict of interest. Pl.'s Resp. & Mot. 30 n. 6 (citing Bridges Aff.); *see also* Pl.'s Mot. to Supp. the AR 3–4. This evidence, however, is insufficient to establish a potential conflict of interest or bias on the part of the evaluator. Furthermore, the allegation of a potential conflict of interest or bias presented in the Bridges Affidavit is unrelated to the lack of expertise of which SES complains. Thus, SES's disagreement with the qualifications of the evaluators does not warrant questioning the Air Force's assignment of three "unacceptable" ratings during its evaluation of SES.

■ Plaintiff next contends that the nine mission areas of Sub-factor 2 are so intertwined, that it was arbitrary to find SES "unacceptable" in three areas when it was "acceptable" in the remaining six. Pl.'s Resp. & Mot. 33. It is axiomatic, however, that protests challenging the terms of the solicitation must be brought prior to the closing date for proposals. *See Blue & Gold Fleet*, 492 F.3d at 1313 ("[The Court of Appeals for the Federal Circuit] also hold[s] that a party who has the opportunity to object to the terms of a government solicitation containing a patent error and fails to do so prior to the close of the bidding process waives its ability to raise the same objection subsequently in a bid protest action in the Court of Federal Claims."). Here, SES was on notice that it was required to demonstrate its capability to provide A & AS in each of the nine mission areas from the Solicitation. AR 499, 500. The Solicitation noted that the Air Force would evaluate each offeror's ability to perform all nine mission areas. AR 510. To the extent that SES believes the agency was required to evaluate the nine areas as a whole, it was required to challenge the Solicitation prior to receipt of proposals. *See Blue & Gold Fleet*, 492 F.3d at 1313.

Lastly, SES argues that the Air Force arbitrarily failed to follow the evaluation scheme. Pl.'s Resp. & Mot. 35–36. SES contends that the Air Force assigned it either "acceptable" or "unacceptable" ratings without considering whether SES's proposal was "reasonably susceptible of being made acceptable." *Id.* at 36. Essentially, SES argues that, because there was neither an assignment of "reasonably susceptible of being made acceptable" or a discussion of whether that rating was appropriate, the evaluation was necessarily arbitrary and capricious.

SES, however, offers little support for this position and its argument is untenable. Simply because SES received three "unacceptable" ratings instead of an intermediate rating does not automatically indicate that the Air Force improperly evaluated SES's proposal. Further, to the extent that SES argues that it should have received "reasonably susceptible of being made acceptable" ratings instead of "unacceptable," its argument again amounts to mere disagreement with the Air Force's evaluation and this Court will not second guess the discretionary determinations of procurement officials in such a technical evaluation. *E.W. Bliss*, 77 F.3d at 449.

Within this protest ground, SES contends that the evaluation was not properly documented because one evaluator made "no evaluation whatsoever for six of the nine mission areas" and referenced a different offeror in a heading on one evaluation worksheet. Pl.'s Resp. & Mot. 36. However, the evaluation sheet contains an ample discussion of three of the mission areas in which SES received "unacceptable" ratings and directly references SES's proposal, indicating that the reference to another offeror in the heading was simply a mislabel. AR 7332–33.

*Conclusion*

For the foregoing reasons, Defendant's motion for judgment on the Administrative Record is GRANTED, and Plaintiff's cross-motion for judgment on the Administrative Record is DENIED. Defendant's motion to strike Plaintiff's affidavits is GRANTED IN PART and DENIED IN PART, and Plaintiff's motion to supplement the Administra-

tive Record is GRANTED IN PART and DENIED IN PART. The Clerk shall enter judgment for Defendant. No costs.

On or before February 10, 2009, the parties shall carefully review this unredacted opinion for competition-sensitive, proprietary, confidential or other protected information, and submit to the Court proposed redactions to this opinion, if any, before it is released for publication.

IT IS SO ORDERED.